**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RANDY HOWARD, individually and
on behalf of all others similarly
situated,

       Plaintiff-Appellee,

v.

FERRELLGAS PARTNERS, L.P.;
FERRELLGAS, L.P.; FERRELLGAS,
INC.,

       Defendants-Appellants,

and

DOES 1 THROUGH 25,

       Defendants.

No. 13-3061

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:10-CV-02555-JTM-JPO)**

Peter W. Herzog III of Bryan Cave LLP, St. Louis, Missouri (Kathryn R. DeBord
of Bryan Cave LLP, Denver, Colorado, with him on the briefs), for Defendants-
Appellants.

Charles Slidders of Milberg LLP, New York, New York (R. Frederick Walters of
Walters Bender Strohbehn & Vaughan, P.C., Kansas City, Missouri, and Peggy
Wedgworth of Milberg LLP, New York, New York, with him on the brief), for
Plaintiff-Appellee.

Before **KELLY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated. While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a "fundamental principle" that "arbitration is a matter of contract," not something to be foisted on the parties at all costs. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).

What happens when it's just not clear whether the parties opted for or against arbitration? The FAA tells district courts to "proceed summarily to the trial" of the relevant facts. 9 U.S.C. § 4. Once the facts are clear, courts must then apply state contract formation principles and decide whether or not the parties agreed to arbitrate. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). The object is always to decide quickly — summarily — the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute.

That much didn't happen here. After Randy Howard sought to bring a class action against Ferrellgas in federal court for allegedly overcharging him and other

customers on a massive scale, Ferrellgas moved to force Mr. Howard to pursue his individual claim alone in arbitration, arguing that's the procedure the parties had agreed to. Unsure whether Ferrellgas had shown an agreement to arbitrate in its initial motion, the district court entertained discovery and further motions practice. After that process exhausted itself, the court found too many unresolved factual questions remained and proceeded to invite yet more discovery followed by yet more motions practice. Finally, almost a year and half after Ferrellgas filed its motion to compel arbitration, the court issued an order in which it found that material disputes of fact still prevented it from saying for certain whether or not the parties had agreed to arbitrate. But rather than proceeding to resolve the conflicting factual accounts through trial as the Act requires, the court entered an order *denying* arbitration outright.

That was error. When it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration. *See, e.g.*, *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). In these circumstances, the Act's summary trial can look a lot like summary judgment. But when, as in this case, a quick look at the case suggests material disputes of fact *do* exist on the question whether the parties agreed to arbitrate, round after round of discovery and motions practice isn't the answer.

- 3 -

Parties should not have to endure years of waiting and exhaust legions of photocopiers in discovery and motions practice merely to learn *where* their dispute will be heard. The Act requires courts process the venue question quickly so the parties can get on with the merits of their dispute in the right forum. It calls for a *summary trial* — not death by discovery. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983) (FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues").

Of course, the parties here didn't exactly help themselves. They were anything but quick to seek the trial promised by the Act. In fact, they seemed content enough to haggle along together in the usual way of contemporary civil litigation, all about discovery disputes and motions practice and with only the most glancing consideration given to the possibility of trial. But even if today some may prefer the familiarity of lingering discovery to the conclusiveness of trial, that's simply not the process specified by the Act. *See ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 113 (2d Cir. 2012) (distinguishing between the Act's "simple, flexible framework" and "the intricate requirements of" pre-trial civil litigation practice).

Not only did the proceedings here veer badly off course, they ended in an impermissible place. One thing the district court may never do is find a material dispute of fact *does* exist and then proceed to *deny* any trial to resolve that dispute

of fact. That's like mixing apples and oranges, like saying someone who fails to win a summary judgment motion must necessarily lose after trial. It confuses the very different roles summary judgment and trial serve in our legal order. Having found unresolved questions of material fact precluded it from deciding definitively whether the parties agreed to arbitrate, the district court was in no position to *deny* a motion to arbitrate. It *had* to move promptly to trial of the unresolved factual questions surrounding the parties' claimed agreement to arbitrate.

Neither is there any question that, even after all the parties' discovery machinations, critical questions of fact *still* remain on the threshold question whether they agreed to arbitrate. We know Mr. Howard called Ferrellgas to order propane to heat his home. We know Ferrellgas agreed to sell him some. But much more than that remains unclear even now. Did the parties form a final and complete oral contract in that initial phone call governing *all* their propane dealings over the next few years? Or did their agreement cover *only* Mr. Howard's propane tank rental and its initial fill, in this way perhaps leaving room for Ferrellgas's later-delivered, arbitration-clause-containing form contract to govern the parties' subsequent dealings, including the later propane purchases at issue in this case?

Whether this case belongs in arbitration or litigation hinges on the answers to factual questions like these. It is possible that the parties reached an agreement

requiring Ferrellgas to refill Mr. Howard's propane tank at market prices whenever it verged on empty, without a single mention of Ferrellgas's forthcoming written terms. If that's the case, then under Kansas law (which the district court applied here) Ferrellgas's arbitration clause could modify the parties' preexisting oral agreement only with Mr. Howard's express consent, something he contends he never gave. *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1341 & n.13 (D. Kan. 2000); *see also Wachter Mgmt. Co. v. Dexter & Chaney, Inc.*, 144 P.3d 747, 752, 755 (Kan. 2006) (expressing agreement with *Klocek*). But it also remains possible that the parties agreed only to an initial fill during that phone call. And if *that's* the case, then under Kansas law Ferrellgas's arbitration clause and other written terms may well govern the parties' later dealings because they amounted to an offer to provide future service that Mr. Howard accepted when he chose to keep the propane Ferrellgas went on to deliver. *See Crouch v. Marrs*, 430 P.2d 204, 209 (Kan. 1967) (an offeree normally manifests acceptance when he "exercise[s] dominion over the thing offered him"); Restatement (Second) of Contracts § 69(2) (1981). Simply put, without knowing definitively what happened in the parties' initial encounter — without factual findings about what was said and whose story to credit — we don't know whether Ferrellgas's introduction of the written contract amounted to an (unsuccessful) attempted modification of an existing agreement or an (accepted) new offer that governed not the first fill but later ones. And without

knowing that, we don't know whether the parties agreed to arbitrate a dispute like this one.

*

Mr. Howard resists the idea that a trial is needed. In fact, he argues that the FAA's trial guarantee doesn't apply unless and until the party moving for arbitration has first proven the existence of an agreement to arbitrate. In support of his view, he quotes this bit from *Avedon Engineering, Inc. v. Seatex*: "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." 126 F.3d 1279, 1287 (10th Cir. 1997). But the point of this passage is entirely different and much more prosaic than Mr. Howard seems to think: it merely points out that the FAA doesn't compel arbitration until it's proven the parties agreed to arbitrate — and that the existence (or nonexistence) of an agreement to arbitrate is judged by normal state law contract formation principles. *Id.* at 1286-87. Indeed, Mr. Howard's contrary interpretation fails to take account of the express acknowledgment in *Avedon Engineering* that "[w]hen parties dispute the making of an agreement to arbitrate," the district court should hold a trial on the subject "unless there are no genuine issues of material fact regarding the parties' agreement." *Id.* at 1283. Neither is Mr. Howard's interpretation of *Avedon Engineering* just inconsistent with its plain language; it would also invite a nonsense. What end might be served by a trial on the question whether the parties agreed to arbitrate once the

- 7 -

party seeking arbitration has proven they did? What would be the point of the statutory language directing a trial "[i]f the making of the arbitration agreement [is] . . . in issue"? 9 U.S.C. § 4. None springs to mind and Mr. Howard suggests none.

Retreating, Mr. Howard suggests that a remand for the trial the FAA prescribes would serve no purpose in this particular case. Because any trial here would be a bench trial — only the party resisting arbitration has the power to demand a jury and Mr. Howard says he has no intention of doing that — the district judge would act as fact-finder. And, Mr. Howard submits, the district judge in this case would surely conclude after trial that the parties never agreed to arbitrate. In this way Mr. Howard invites us to call the district court's failure to hold a trial a harmless error. He assures us he will inevitably prevail at trial because he prevailed against Ferrellgas's summary-judgment-like motion.

But that much does not necessarily follow and here again we have parties confusing the point of summary judgment with the point of trial. So far the district court has only held that a reasonable person could believe Mr. Howard's account of the facts — his claim that the parties formed an oral agreement covering all their future dealings and that he never assented to any modification of that deal. In deciding this much, moreover, the district court has only and always viewed all the facts in the light most favorable to Mr. Howard. At trial, the court must lift that thumb from the scales, evaluate the conflicting evidence

- 8 -

even-handedly, and decide which side's account is more likely true. Deciding whether a reasonable person could find in your favor when looking at all the facts your way just isn't the same thing as saying your story is the more credible one when viewed with the cool dispassion of a neutral judge. Maybe the district court will still find in Mr. Howard's favor after trial, just as he contends. But nothing in the court's disposition to date renders that a foregone conclusion.

*

Mr. Howard isn't the only one who suggests we might avoid the necessity of a trial. To be sure, Ferrellgas argues the district court erred by failing to hold a trial after declaring that material disputes of fact still needed to be resolved. But, the company says, the district court *also* erred before that by declaring material disputes of fact needed to be resolved. Under any reasonable view of the facts, Ferrellgas submits, the parties agreed to arbitrate as a matter of law. So allow trial if we must, the company says, but better yet we can and should fast-forward these long-delayed proceedings, enter an order compelling arbitration, and put an end to the parties' venue miseries.

How can we do this? Ferrellgas insists that when we look at the evidence carefully for ourselves we will not find any competent support for Mr. Howard's contention that in the initial phone call the parties reached an oral agreement covering all future deliveries. Contrary to the district court's conclusion, Ferrellgas says, any rational person viewing the facts has to conclude that the first

- 9 -

phone call was only about the delivery of a tank and its first filling; the call never purported to address the parties' future dealings. Maybe Mr. Howard secretly intended to sign up for ongoing propane service, but the company says the objective facts about the call all suggest he accomplished no such thing. For this reason, it says, the arbitration question can and should be decided as a matter of law in its favor.

Ferrellgas is quite right that contract formation in the sale of goods can often turn on objective manifestations of assent, not the secret subjective intentions of one party or the other. *See, e.g.*, *Nat'l Envtl. Serv. Co. v. Ronan Eng'g Co.*, 256 F.3d 995, 1002 (10th Cir. 2001) (the UCC relies "on objective, observable manifestations of intent to contract," not the purely subjective intent of the parties). But the company is quite wrong to suggest that Mr. Howard's testimony about the parties' conversation holds no clues about how an objective observer would have interpreted the Ferrellgas representative's statements. Mr. Howard didn't merely testify about the future service he *subjectively intended* to order: he testified that a Ferrellgas representative *expressly promised* to keep his tank full and deliver all future fills at the then-prevailing market price. More than that, Mr. Howard introduced a script that Ferrellgas gives to train employees who take customer phone orders. This describes three alternative plans that Ferrellgas employees can offer prospective customers. For at least two of these plans, the script assures the subscriber that Ferrellgas will automatically refill his propane

tank — and in this way could lead a reasonable person to believe ongoing service was promised and agreed. At the end of the day, then, the facts hardly point in only the direction Ferrellgas suggests.[1]

With that, it becomes Ferrellgas's turn to retreat. Even supposing the parties *did* reach an understanding over the phone that covered *all* future refills as Mr. Howard contends, Ferrellgas submits that its later-introduced arbitration clause *still* governs the parties' subsequent dealings as a matter of law.

How might that be? As we've seen, if the parties reached an agreement covering all their dealings in the initial phone call, Ferrellgas's later-introduced arbitration clause amounts under Kansas law to a proposed amendment requiring Mr. Howard's express consent to become effective, consent that Mr. Howard insists he never gave.

---

[1] Separately, Ferrellgas suggests in its reply brief that the parol evidence rule bars consideration of Mr. Howard's account of the parties' oral dealings. The company likewise contends that the statute of frauds requires any contract along the lines Mr. Howard posits to be written down. Because these points weren't raised until the reply brief, we deem them as waived for purposes of this appeal. *See Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir. 2007). Ferrellgas further contends that Mr. Howard's claimed oral contract would have been unenforceable for want of consideration because Mr. Howard's claimed promise to buy propane from Ferrellgas after the first fill was illusory — at his sole discretion he could choose to buy as much propane as he wanted. *See* 3 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 7:7 (4th ed. 2008). But because Mr. Howard promised to buy at least a full tank's worth of propane to start with, his promise to buy placed him under a genuine obligation and so counts as valid consideration. *See* Restatement (Second) of Contracts § 77 cmt. b, illus. 3 (1981).

But what if the law treated those same facts differently?  Ferrellgas points to and asks us to invoke the so-called rolling theory of contract formation, an idea with roots in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), and *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996).  In *Hill*, much as here, a commercial relationship between company and consumer began with a telephone order.  Some while later the company in *Hill*, again much as here, sought to introduce its written arbitration provision into that relationship.  The *Hill* court held that the company's efforts succeeded, that the contract wasn't fully formed during the initial call but continued to form over the course of the parties' interactions.  Ferrellgas submits we should apply the same rolling view of contract formation to the parties' dealings in this case, treating its introduction of written terms as a step in the formation of the original contract itself, not as an amendment to an agreement fully formed by the end of that first phone call.

The problem is Ferrellgas's rolling contract formation theory may be about as controversial an idea as exists today in the staid world of contract law.  Some states endorse the theory, but others reject it — holding that a seller's later-arriving written contract constitutes at most only a proposal to modify a preexisting oral contract, and that a buyer's assent to the proposed modification won't be inferred simply from the buyer's continuing the preexisting oral contract.  *See generally* John Edward Murray, Jr., *Murray on Contracts* § 51[J] (5th ed. 2011).  It's pretty clear, moreover, that Kansas is among those states that

- 12 -

reject the rolling theory of contract formation. *See Wachter Mgmt. Co.*, 144 P.3d at 755; *Klocek*, 104 F. Supp. 2d at 1341; John E. Murray, Jr., *The Dubious Status of the Rolling Contract Formation Theory*, 50 Duq. L. Rev. 35, 63-65 (2012).

Where does that leave us? Ferrellgas doesn't seek to show its theory succeeds under Kansas law. Instead, it submits it should prevail yet because the district court erred by applying Kansas law to this case. In the company's view, California law should control the question whether the parties agreed to arbitrate. And, Ferrellgas continues, California counts itself among those states that have adopted the rolling theory of contract formation.

About this, however, we harbor our doubts. Everyone acknowledges that Kansas's choice of law principles apply to this case. Everyone acknowledges that Kansas choice of law principles suggest that the location of "the last act necessary" to form the contract determines which state law governs their contract formation dispute. *See In re K.M.H.*, 169 P.3d 1025, 1031-32 (Kan. 2007); Restatement (First) of Conflict of Laws § 332 (1934). But at this point in the proceedings, it's anything but clear where "the last act necessary" to form the contract in this case took place. If the contract was formed when Mr. Howard accepted Ferrellgas's offer to sell him propane while at his home in California, California law might apply, just as Ferrellgas argues. But if the contract was formed when (say) Ferrellgas accepted Mr. Howard's terms from Ferrellgas's office in Washington, then Washington law might apply. Once again material

- 13 -

factual disputes about the content of the parties' dealings cloud the path and preclude a definitive ruling. And where (as here) a party fails to make "a clear showing that another state's law should apply," Kansas choice of law principles require a court to default to Kansas substantive law. *See In re K.M.H.*, 169 P.3d at 1032 (collecting cases). Precisely the course the district court found itself compelled to take in this case.

Even so, Ferrellgas isn't without a reply. If the problem is uncertainty over whether the final act consummating this contract took place in Washington or California, Ferrellgas says that's no real problem at all. It isn't, the company insists, because *both* Washington and California endorse the rolling contract theory. And when *all* the plausible choice of law candidates share a common view of the law, *that* view should control, not the view embodied in Kansas substantive law. *Cf. Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 372 (Kan. 2002) (endorsing application of forum state law when there is no true conflict between it and the law of other choice of law candidates).

Although this line of argument may have much to commend it in theory, it bears a problem as applied to this case. Ferrellgas's submission rests on the premise that California and Washington are equally solicitous of the rolling contract theory, even if Kansas isn't. But the strength of that premise is far from clear, at least from a review of the authorities the parties have cited in this appeal. While Washington does seem to approve the rolling contract theory, *see M.A.*

*Mortenson Co. v. Timberline Software Corp.*, 998 P.2d 305, 310-14 (Wash. 2000), Ferrellgas hasn't proven that California law is anything like so welcoming to it. The company identifies no controlling authority from the California state supreme court. Instead, it cites a federal district court case out of California that seems to endorse the rolling contract theory, *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002), but that case in turn points to an intermediate state appellate court decision that seems a good deal less helpful to Ferrellgas's cause: *Badie v. Bank of America*, 79 Cal. Rptr. 2d 273 (Ct. App. 1998). There the California Court of Appeal confronted a challenge by several of the bank's customers to the bank's attempt to add an arbitration clause to the terms of their preexisting account agreements. *Id.* at 275-77. Even though the original agreements expressly authorized the bank to change their terms unilaterally, the court didn't think the parties intended to allow the addition of arbitration provisions. *See id.* at 287-89. Then, having determined that the arbitration addition wasn't supported by the contracts' modification provision, the court proceeded to reject the suggestion that the customers' "failure to close or stop using" their accounts after receipt of the arbitration clause constituted a "clear and unmistakable indication" that they assented to its addition. *Id.* at 290-91. Ferrellgas offers us no clear reason to believe California contract law would be any more inclined to treat Mr. Howard's continued acceptance of Ferrellgas deliveries as assent to adding an arbitration clause to the parties' oral agreement.

In these circumstances, we can't fault the district court for resorting to Kansas substantive law. Before the court was free to abandon the default presumption that Kansas law controls, Ferrellgas had to make "a clear showing that another state's law should apply." *In re K.M.H.*, 169 P.3d at 1032. That it did not do. Material disputes of fact prevented the district court from being able to conclude clearly where the last act occurred in the contract formation process and thus whether Washington or California law should apply. Neither has Ferrellgas shown — clearly — that relevant Washington and California contract formation principles align. Given all this, the district court understandably resorted to the default presumption in favor of Kansas law. Certainly Ferrellgas has cited no authority suggesting that in doing so the district court misapplied Kansas choice of law rules, let alone any authority suggesting the application of those rules in this case offends constitutional due process or full faith and credit commands. *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818-19 (1985). Maybe after trial when the facts are finally found the district court will be able to say where the last act forming the contract took place and thus able to say whether California or Washington law should apply. But at least for now, that's more than the record will allow.

\*

We appreciate both sides' evident frustration at how long this case has lingered at the transom without having entered either the door into arbitration or

litigation. It's understandable that everyone might want us to give the case a firm nudge (one way or the other) so the parties' dispute can finally progress past preliminary venue questions to the merits. But unresolved material disputes of fact block our way — disputes that could and should have been resolved years ago according to the procedures the FAA provides. Summary-judgment-like motions practice may be a permissible and expedient way to resolve arbitrability questions when it's clear no material disputes of fact exist and only legal questions remain. But when factual disputes may determine whether the parties agreed to arbitrate, the way to resolve them isn't by round after round of discovery and motions practice. It is by proceeding *summarily* to trial. That is the procedure the Act requires and the parties should have undertaken a long time ago — and it is the procedure they must follow now. The district court's denial of Ferrellgas's motion to compel arbitration is vacated and this case is remanded for further proceedings consistent with this opinion.