**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 21, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SAMI RAGAB, an individual,

      Plaintiff - Appellee,

v.

MUHAMMAD HOWARD,
individually and in his capacity as
owner, partner, and corporate officer,
ULTEGRA FINANCIAL PARTNERS,
INC., a Colorado corporation; CLIVE
FUNDING, INC., a Utah corporation,

      Defendants - Appellants,

and

SEED CONSULTING, d/b/a Seed
Capital,

      Defendant.

No. 15-1444

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:15-CV-00220-WYD-MJW)**

---

John Mallonee, Boulder, Colorado, for Defendants - Appellants.

Todd A. Wells (Theodore J. Gleason, and Coren R. Hinkle, with him on the
brief), of Gleason Wells, P.C., Denver, Colorado, for Plaintiff - Appellee.

---

Before **KELLY**, **BRISCOE**, and **GORSUCH**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendants-Appellants Ultegra Financial, its CEO Muhammad Howard, (collectively Ultegra Defendants) and Clive Funding, Inc., appeal from the district court's order denying their motion to compel arbitration. Ragab v. Howard, No. 15-cv-00220-WYD-MJW, 2015 WL 6662960 (D. Colo. Nov. 2, 2015). Our jurisdiction arises under 9 U.S.C. § 16(a)(1) and we affirm.

Background

In 2013, Mr. Ragab entered into a business relationship with the Ultegra Defendants. The parties had six agreements: a Consulting Agreement, a Membership Interest Purchase Agreement (Purchase Agreement), an Operating Agreement, an Assignment of Limited Liability Company Interest Agreement (Assignment Agreement), an Employment Agreement, and a Non Circumvention, Non Disclosure & Confidentiality Agreement (Non-Circumvention Agreement). Aplt. App. 113–50.

The agreements contain conflicting arbitration provisions. See Aplt. App. 167–87. Suffice it to say the conflicts involve (1) which rules will govern, (2) how the arbitrator will be selected, (3) the notice required to arbitrate, and (4)

who would be entitled to attorneys' fees and on what showing.[1]

In 2015, Mr. Ragab sued the Ultegra Defendants for misrepresentation and for violating several consumer credit repair statutes. The district court found that Mr. Ragab's claims fell within the scope of all six agreements. Ragab, 2015 WL 6662960, at *4. The Ultegra Defendants moved to compel arbitration. Mr. Ragab added Defendant Clive Funding, Inc., which joined the Ultegra Defendants' motion. The district court denied the motion to compel, concluding that there was no actual agreement to arbitrate as there was no meeting of the minds as to how claims that implicated the numerous agreements would be arbitrated.

---

[1] For example:

(1) the Consulting Agreement states that arbitration will proceed under the rules of Colorado's Uniform Arbitration Act of 1975, but the Operating Agreement, Membership Interest Purchase Agreement, and the Assignment of LLC Membership Interest all require application of the AAA Commercial Arbitration Rules, and the Confidentiality and Non-circumvention Agreement requires "Rules of the Colorado Court";

(2) the Consulting Agreement states that an arbitrator will be chosen by consent of the parties, or appointed by a Colorado court if the parties cannot agree; whereas the Operating Agreement, Membership Interest Purchase Agreement, and the Assignment of LLC Membership Interest all require that the arbitrator be chosen by the American Arbitration Association (AAA);

(3) the Operating Agreement requires a thirty-day notice period prior to proceeding to arbitration, whereas the Membership Interest Purchase Agreement and the Assignment of LLC Membership Interest require only ten days; and

(4) the Consulting Agreement requires each party to pay its own arbitration costs and fees, but the Operating Agreement, Membership Interest Purchase Agreement, and the Assignment of LLC Membership Interest all permit the award of costs and fees to the prevailing party.

Discussion

A.      Motion to Compel Arbitration

We review a district court's denial of a motion to compel arbitration de novo and apply the same legal standard as the district court.  Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 796 (10th Cir. 1995).  We first address whether the inconsistencies across the six arbitration provisions indicate that the parties failed to have a meeting of the minds with respect to arbitration.

The Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'"  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)); see also 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").  Therefore, "all doubts must be resolved in favor of arbitration."  Armijo, 72 F.3d at 798.

However, whether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate.  United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960); see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989).  No party can be compelled to submit a dispute to arbitration

- 4 -

without having previously agreed to so submit.  United Steelworkers, 363 U.S. at 582.

We apply state-law principles in deciding whether parties agreed to arbitrate.  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Contract formation in Colorado requires evidence "that the parties agreed upon all essential terms."  I.M.A., Inc. v. Rocky Mountain Airways, Inc., 713 P.2d 882, 888 (Colo. 1986).  A meeting of the minds is essential.  Agritrack, Inc. v. DeJohn Housemoving, Inc., 25 P.3d 1187, 1192 (Colo. 2001).  This can be demonstrated by the parties' "conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement."  I.M.A., 713 P.2d at 888.  Courts cannot create or enforce contracts between parties when the contract itself does not clearly demonstrate the parties' intent.  Newton Oil Co. v. Bockhold, 176 P.2d 904, 908 (Colo. 1946).

No Colorado court[2] has addressed whether parties can be compelled to arbitrate given conflicting arbitration provisions, but other courts have.  A New Jersey[3] court, for example, has concluded that irreconcilable differences across

---

[2]  The parties reference extensively Bellman v. i3Carbon, LLC, 563 F. App'x 608 (10th Cir. 2014), an unpublished order and judgment.  Bellman is not factually analogous to this case because it does not involve multiple conflicting arbitration provisions, but rather an arbitration provision, and a forum selection clause.  Id. at 610.  We therefore do not find Bellman persuasive.

[3]  Other jurisdictions have also found that conflicting terms in multiple arbitration provisions eliminate a duty to arbitrate.  See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 838

multiple arbitration provisions indicate that the parties did not agree to arbitrate. See, e.g., NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 24 A.3d 777, 794 (N.J. Super. Ct. App. Div. 2011). At issue in NAACP were three agreements that each contained an arbitration provision. 24 A.3d at 781–82. The inconsistencies across the six arbitration provisions in the case at hand almost mirror the irreconcilable portions of the arbitration provisions in NAACP, including the governing rules, the day by which the parties had to initiate arbitration, and which party was responsible for the arbitration fees. Id. at 794. Based on these inconsistencies, the court found that "the arbitration provisions . . . [were] too plagued with confusing terms and inconsistencies to put a reasonable consumer on fair notice of their intended meaning." Id. The Ultegra Defendants and Clive Funding, Inc. argue that NAACP is distinguishable because it involved an elderly woman who was not well educated. Id. at 781; Aplt. Br. at 24–25. This distinction, however, is unavailing. As the court in NAACP explained, even if the case involved a prudent purchaser — one who reads arbitration clauses — the conflicting terms would have prevented her from understanding "what the exact terms and conditions of that arbitration process would be." 24 A.3d at 794. Relying on AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011), the court also recognized that "the FAA does not require an arbitration provision to

F. Supp. 2d 967, 992 (C.D. Cal. 2012); Basulto v. Hialeah Auto., 141 So. 3d 1145, 1156 (Fla. 2014).

be enforced if the provision is defective for reasons other than public policy or unconscionability." Id. at 792. That is the case here.

Courts have granted motions to compel despite the existence of conflicting arbitration provisions when the contracts themselves provide the solution. For example, in Ex parte Palm Harbor Homes, Inc., 798 So. 2d 656, 660 (Ala. 2001), the parties had executed several agreements each containing a different arbitration clause. Id. The court ordered arbitration according to the arbitration provision in the contract which contained a merger clause, concluding that provision superceded the others.[4] Id. Here, however, there is no language in the six agreements that suggests one contract overrides the others, and we cannot arbitrarily pick one to enforce because doing so could violate the other five.

The Ultegra Defendants and Clive Funding further argue that the court should compel arbitration here because courts have compelled arbitration based on a single provision that merely requires arbitration, but does not spell out any other arbitration-related terms. Aplt. Br. at 30–31; see Guthrie v. Barda, 533 P.2d 487, 487 (Colo. 1975) (upholding an arbitration provision that only stated that claims "shall be submitted to binding arbitration"). But such a scenario is not relevant to this case, which involves multiple, specific, conflicting arbitration

---

[4] "Typically, merger clauses are strong evidence that the parties did not intend to include terms not expressly incorporated into the document containing the clause." Summit Contractors, Inc. v. Legacy Corner, L.L.C., 147 F. App'x 798, 801 (10th Cir. 2005).

- 7 -

provisions, and not one general or vague arbitration clause.

Thus, the conflicting details in the multiple arbitration provisions indicate that there was no meeting of the minds with respect to arbitration. Such a conclusion is fully supported by contract formation requirements in Colorado. See I.M.A., 713 P.2d at 888 (explaining that contract formation requires that parties "agree[] upon all essential terms").

B.    Summary Trial

The Ultegra Defendants and Clive Funding also assert that the district court erred in not granting them a summary trial in deciding whether the parties agreed to arbitrate. Aplt. Br. at 44. Our review is de novo. See Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 978 (10th Cir. 2014).

When parties do not dispute the material facts surrounding an arbitration provision, then a district court, while viewing the facts most favorable to the non-moving party, can decide as a matter of law whether the parties actually agreed to arbitrate. Id. This standard is similar to the summary judgment standard. Id. When there is a genuine dispute of material facts, district courts must "proceed summarily to the trial" to resolve the factual disputes. 9 U.S.C. § 4.

The district court found that there were "'genuine issues of material fact regarding the parties' agreement,'" and therefore denied the motion to compel arbitration. Ragab, 2015 WL 6662960, at *6 (quoting Hancock v. AT&T Co., 701 F.3d 1248, 1261 (10th Cir. 2012)). Be that as it may, there are no material factual

disputes in this case that we can see: the parties agreed that they entered into six agreements, and do not dispute what the arbitration provisions say. What remained was an application of law: did the provisions conflict to such an extent that the parties could not have had a meeting of the minds? <u>Armijo</u>, 72 F.3d at 797. A summary trial on this issue was unnecessary.

AFFIRMED.

No. 15-1444, *Ragab v. Howard*

**GORSUCH**, Circuit Judge, dissenting.

My colleagues are of course correct that "arbitration clauses are only valid if the parties intended to arbitrate." Op. at 4. But, respectfully, I just don't see any doubt that the parties before us did intend to arbitrate. All six — yes *six* — of the parties' interrelated commercial agreements contain arbitration clauses. The plaintiff himself, the party the court today permits to avoid arbitration, instructed his own counsel to draft *three* of these agreements. In my view, parties to a commercial deal could have hardly demonstrated with greater clarity an intention to arbitrate their disputes and I see no way we might lawfully rescue them from their choice.

To be sure and as my colleagues note, the six agreements before us differ on the details concerning *how* arbitration should proceed. This disagreement, my colleagues suggest, is fatal because to form a contract the parties must agree on "essential terms." Op. at 5, 8. But, respectfully, I believe treating the procedural details surrounding arbitration in this case as *non*essential terms would do a good deal more to "effectuate[] the intent of the parties" before us, itself always the goal of contract interpretation. *Lane v. Urgitus*, 145 P.3d 672, 677 (Colo. 2006). Indeed, I see two easy workarounds that I believe would be more consistent with the parties' expressed purposes than the course my colleagues chart. First, it seems pretty clear the plaintiff in this case would be free to initiate arbitration under the terms of whichever of the six agreements he prefers — after all, even

the defendants have expressly acknowledged that his claims fall within the scope of every single agreement. So it is the plaintiff need only choose which procedures he likes best. Second, Colorado's preference for arbitration has led it to enforce even arbitration clauses that say no more than that disputes "shall be submitted to binding arbitration" without *any* discussion of procedural details. *Guthrie v. Barda*, 533 P.2d 487, 487 (Colo. 1975). In circumstances like these, Colorado statutory law provides a method for appointing an arbitrator when the agreement fails to do so, Colo. Rev. Stat. § 13-22-211(1), and a means for the arbitrator to determine any outstanding procedural issues, *id.* § 13-22-215 (process); *id.* § 13-22-217 (discovery); *id.* § 13-22-221 (attorneys' fees). The Federal Arbitration Act contains similar provisions. *See* 9 U.S.C. § 5; *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 792-93 (7th Cir. 2013) (collecting cases using § 5 "to complete detail-free arbitration clauses"). We could simply follow that well trodden path here too. Indeed, either of these routes would, it seems to me, effectuate the intent of the parties much better than eradicating all six arbitration agreements root and branch and allowing the plaintiff to escape the consequences of a choice he once so clearly preferred but now simply regrets.

Consider an analogy outside arbitration. In the "battle of the forms" purchasers and vendors agree to transact but each side memorializes the deal on its own standard forms. *See, e.g.*, *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). This court has interpreted the Uniform Commercial Code

-2-

to mean that conflicting terms in these forms knock each other out but do not void the contract. *Id.* at 1579. That is because a meeting of the minds occurs with respect to the fundamentals of the deal even if not with respect to the details. *Id.* at 1580 (explaining that the "fundamental purpose of the U.C.C. . . . is to preserve a contract and fill in any gaps if the parties intended to make a contract and there is a reasonable basis for giving an appropriate remedy"). Respectfully, I would follow the same course here. Indeed, there may be an argument that both Colorado law and the FAA require it. Colorado law given its strong support for arbitration. *See, e.g.*, *Lane*, 145 P.3d at 678 ("Our constitution, our statutes, and our case law all support agreements to arbitrate disputes."). And the FAA given its non-discrimination principle that requires us to treat arbitration clauses with no less solicitude than we afford to other contractual provisions, like those that apply in the battle of the forms context. *See* 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

In reaching the opposite judgment, my colleagues place great weight on New Jersey cases that have voided arbitration agreements for inconsistency. But, respectfully, I do not see the relevance of these authorities even taken on their own terms. For example, in *NAACP* the court held that, as a matter of New Jersey law, consumer contracts must "convey — with precision and consistency — what the exact terms and conditions of th[e] arbitration process [are]." *NAACP of Camden Cty. E. v. Foulk Mgmt. Corp.*, 24 A.3d 777, 794 (N.J. Super. Ct. App.

-3-

Div. 2011). But the reasons for that rule find no purchase here. New Jersey courts say they demand "extra clarity" in arbitration agreements to protect consumers against unknowingly waiving their right to sue under the State's Consumer Fraud Act. *See id.* at 797; *Rockel v. Cherry Hill Dodge*, 847 A.2d 621, 623 (N.J. Super. Ct. App. Div. 2004). And they say they take "particular care" in scrutinizing mutual assent in the consumer arena "because arbitration provisions are often embedded in contracts of adhesion." *NAACP*, 24 A.3d at 790-91; *see also Rockel*, 847 A.2d at 627. But this case, by contrast, involves parties to a commercial, not a consumer, transaction, with contracts actively negotiated by both sides, not contracts of adhesion thrust upon the plaintiff. Indeed, three of the six agreements before us contain handwritten modifications and, again, three the plaintiff himself proposed (through his own attorney no less). Respectfully, it seems to me that applying New Jersey's extra clarity requirement to this case divorces a rule from its reasons. Because the plaintiff here resembles a merchant much more than a consumer, the battle of the forms offers the better analogy.

Beyond even that and however instructive *NAACP* might be about New Jersey law, I am also quite unsure whether it has anything to say about Colorado law or whether it would survive a brush with the FAA. Colorado has not adopted the same extra clarity requirement for consumer contracts that New Jersey has. And until it does so I respectfully suggest we should prefer rules harmonious with the State's established policy in favor of arbitration and against erecting barriers

-4-

to arbitration — especially where, as here, both parties have so clearly and repeatedly demonstrated their desire to arbitrate. Then too there is the federal policy favoring arbitration embodied in the FAA and armed with preemptive force. The Supreme Court has held that the FAA preempts state laws that single out arbitration clauses for disfavored treatment. *See, e.g.*, *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). And our sister circuits have held that states may not disfavor arbitration through special rules about what's required to show contract formation. *See, e.g.*, *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (finding preempted New York's "discriminatory" requirement that arbitration agreements, but not other agreements, be "express" and "unequivocal"). Whether or not the FAA would preempt New Jersey's special "extra clarity" rule for certain kinds of arbitration agreements, that possibility undoubtedly exists and seems to me to counsel against endorsing it without a good deal more careful investigation than the parties offer us in this case.

All this is not to say that I believe conflicting contract provisions might never render an arbitration agreement void for lack of a meeting of the minds. In some cases, for example, the parties' contract documents will conflict on the fundamental question whether they wish to arbitrate or not. *See, e.g.*, *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 614 (10th Cir. 2014). But that is not our case and ours admits a straightforward resolution. Because the plaintiff asked for and

-5-

received assent to three arbitration clauses he drafted and signed three others, all in a commercial setting and while represented by counsel, I just don't see how he can now seriously claim that he never intended to arbitrate — or how we might rightly rescue him from the consequences of his choice. I respectfully dissent.