**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 18-2009**

APRIL D. HILL, individually and on behalf of all others similarly situated,

Plaintiff - Appellee,

v.

EMPLOYEE RESOURCE GROUP, LLC; WV NEIGHBORHOOD HOSPITALITY, LLC; NEIGHBORHOOD HOSPITALITY, INC.,

Defendants - Appellants.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley.  Irene C. Berger, District Judge.  (5:16-cv-11507)

Argued:  March 31, 2020                                         Decided:  June 9, 2020

Before DIAZ and FLOYD, Circuit Judges, and ALSTON, Rossie D., United States District Judge for the Eastern District of Virginia.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Bradley K. Shafer, MINTZER SAROWITZ ZERIS LEDVA & MEYERS, LLP, Wheeling, West Virginia, for Appellants.  Patricia Mulvoy Kipnis, BAILEY & GLASSER LLP, Cherry Hill, New Jersey, for Appellee.  **ON BRIEF:**  Elizabeth Ryan, Boston, Massachusetts, Jonathan R. Marshall, BAILEY & GLASSER LLP, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant-Appellants, Employee Resource Group LLC, Neighborhood Hospitality Inc., and WV Neighborhood Hospitality LLC (collectively, "ERG"), appeal the district court's order granting in part and denying in part ERG's Motion to Enforce Arbitration Agreement. ERG sought arbitration of the federal and state claims alleged by Plaintiff-Appellee, April Hill, on behalf of herself and a class of similarly situated plaintiffs. The district court denied ERG's motion with respect to Hill and other opt-in class members for whom ERG could produce no signed arbitration agreement. For the reasons explained below, we affirm the order of the district court.

I.

ERG owns and operates Applebee's Neighborhood Bar & Grill restaurants in West Virginia, Kentucky, Ohio, Virginia, and Tennessee. Hill is a former employee of ERG's Applebee's in Beckley, West Virginia.

On November 30, 2016, Hill filed suit individually and on behalf of a class of similarly situated employees against ERG. On May 30, 2017, Hill filed a Third Amended Complaint—the operative complaint. Hill alleges that ERG failed to pay employees the minimum wage in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and that ERG failed to pay wages within the time required following voluntary separation in violation of the West Virginia Wage Payment Collection Act (WVCPA), W. Va. Code § 21-51-1 *et seq.*. On July 11, 2017, the district court conditionally certified the FLSA class.

2

On March 18, 2018, ERG filed a "Motion to Enforce Arbitration Agreement" with respect to Hill, the FLSA opt-in plaintiffs, and all members of the putative WVPCA class. J.A. 343–44. ERG did not attach any signed arbitration agreements to its motion. Instead, ERG attached, among other exhibits: (1) a copy of its Dispute Resolution Program booklet containing an arbitration agreement; (2) a copy of a class action opt-in list filed by Hill with annotated "check marks" identifying FLSA opt-in plaintiffs for whom ERG purportedly found arbitration agreements, along with a notation that it did not have arbitration agreements for at least 60 FLSA opt-in plaintiffs; and (3) an affidavit from ERG's Director of Human Resources, David Bates, attesting that all ERG employees were expected to sign arbitration agreements before starting their employment, regardless of location and relevant time period, and that the lack of some arbitration agreements must have been due to recordkeeping errors.

Hill opposed ERG's motion, arguing that ERG was unable to establish the existence and terms of the agreements for at least 60 FLSA opt-in plaintiffs, including herself, and that Mr. Bates's general testimony did not establish the existence of the arbitration agreements.[1]

Shortly thereafter, ERG filed two separate notices—one attaching 21 files purporting to contain 780 arbitration agreements, another attaching six different versions of ERG's Dispute Resolution Program booklets, which contained arbitration agreements.

---

[1] In support of her opposition, Hill attached relevant portions of her deposition testimony in which she stated that she never signed an arbitration agreement.

On April 6, 2018, ERG filed its reply and argued that the documents attached to its notices provided sufficient parol evidence that every employee who worked at ERG, from 2005 to present, was bound by an arbitration agreement regardless of whether it produced the agreement.

On August 7, 2018, the district court granted ERG's motion to compel arbitration only "as to potential class members for whom signed agreements have been produced." J.A. 2452. The district court, however, denied ERG's motion as to class members for whom ERG produced no signed agreements. The district court stated that "[w]ithout testimony from those directly involved in the asserted formation of the contract or a written, signed copy of the contract, there is little evidence to support a finding that the contract exists." J.A. 2451. Thus, ERG had not met its burden of demonstrating that arbitration agreements existed for those potential class members for whom they were unable to produce such agreements. J.A. 2451. The district court's order instructed the parties to supply the court with "lists of opt-in plaintiffs for whom arbitration agreements have and have not been produced, as well as any specific employees for whom there is a dispute regarding the existence or enforceability of an arbitration agreement." J.A. 2452.

Per the district court's order, on September 7, 2018, the parties reported that there were: (1) 71 FLSA opt-in plaintiffs for whom no arbitration agreements were produced; (2) 61 FLSA opt-in plaintiffs for whom arbitration agreements were produced; and (3) 177 FLSA opt-in plaintiffs for whom the parties disputed whether the arbitration agreements

4

were produced, because only a portion of the employment or arbitration agreement was produced.[2]

ERG timely appealed to this Court. On appeal, ERG argues that the district court erred in not compelling arbitration for Hill and the 71 FLSA opt-in plaintiffs for whom no arbitration agreements have been produced.

II.

On appeal, we review de novo the district court's denial of ERG's motion to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*; *see Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 (4th Cir. 2019).

A.

Section 4 of the FAA authorizes a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Whether parties have formed an agreement to arbitrate is for a district court, rather than an arbitrator, to decide. *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).

---

[2] In the September 7, 2018 filing, Ms. Hill reported that as to the WVPCA class, she had identified 1,359 potential class members but that ERG had only produced 18 arbitration agreements as to those putative class members. In the same filing, ERG asked for an opportunity to review its records and produce documentation once the class was finalized. This appeal does not concern any members of the WVPCA class.

Section 4 provides that if the "making of the arbitration agreement" is in issue, then "the court shall proceed summarily to the trial thereof." 9 U.S.C § 4. "[T]he court is obliged to conduct a trial . . . when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support' thereof." *Berkeley*, 944 F.3d at 234 (alteration in original) (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)).

In deciding whether "sufficient facts" support a party's denial of an agreement to arbitrate, "the district court is obliged to employ a standard such as the summary judgment test." *Id.*; *see also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) (Gorsuch, J.) ("[T]he [FAA's] summary trial can look a lot like summary judgment."). If the record reveals a genuine dispute of material fact regarding the existence of an agreement to arbitrate, then "the 'court shall proceed summarily' and conduct a trial on the motion to compel arbitration." *Berkeley*, 944 F.3d at 234 (quoting 9 U.S.C. § 4.). "In other words, to obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate." *Chorley Enters.*, 803 F.3d at 564; *cf. Howard*, 748 F.3d at 978 ("When it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice . . . ."). A factual dispute is material if the resolution thereof "might affect the outcome of the [motion] under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the question is whether an agreement to arbitrate exists between ERG and Hill and the 71 FLSA opt-in plaintiffs for whom no arbitration agreements can be produced.

6

Because the issue of whether an arbitration agreement has been formed is an issue of contract law, we "apply ordinary state-law principles that govern the formation of contracts." *Minnieland Private Day Sch.*, 913 F.3d at 415 (internal quotation mark omitted). Here, the dispute concerns putative arbitration agreements formed in West Virginia (where Hill was employed), as well as Kentucky, Ohio, and Virginia.[3] As a result, each of those four states' law as it pertains to lost or missing instruments is relevant in determining whether an agreement to arbitrate exists between the parties.

Under West Virginia state law, a "high degree of proof from one seeking to establish a lost instrument is required," *Marshall v. Elmo Greer & Sons, Inc.*, 456 S.E.2d 554, 556 (W. Va. 1995), with the "proponent of a lost or missing instrument" needing to "prove its existence and contents with clear and conclusive evidence," *Estate of Bossio v. Bossio*, 785 S.E.2d 836, 841 (W. Va. 2016).

Kentucky, Ohio, and Virginia all have similarly heightened standards of proof for proving the existence of missing or lost instruments through parol evidence. In Kentucky, the evidence necessary to establish a lost writing must be "clear and convincing." *Alph C. Kaufman, Inc. v. Cornerstone Indus. Corp.*, 540 S.W.3d 803, 812 (Ky. Ct. App. 2017) (quoting *Arrington v. Sizemore*, 43 S.W.2d 699, 704 (Ky. Ct. App. 1931)). "When a written contract is to be proved, not by itself but by parol testimony, no vague uncertain

---

[3] Hill's Third Amended Complaint claims ERG also has Applebee's restaurants in Tennessee. However, on appeal neither ERG nor Hill represent that any of the 71 FLSA opt-in plaintiffs for whom no agreement can be produced worked in Tennessee. Therefore, we need not address Tennessee state law. However, it is worth noting that Tennessee appears to also have a heightened standard of proof for proving the existence and contents of a lost or missing instrument. *See Hammer v. Am. United Life Ins.*, 141 S.W.2d 501, 504 (Tenn. Ct. App. 1940) (requiring "clear, convincing, and cogent evidence").

recollection concerning its stipulations ought to supply the place of the written instrument itself." *Arrington,* 43 S.W.2d at 704 (quoting *Tayloe v. Riggs*, 26 U.S. (1 Pet.) 591, 600 (1828)). In Ohio, lost or destroyed contracts may be proved "by competent parol proof and circumstances," and that the "degree of proof is clear and satisfactory." *Umbenhower v. Labus*, 97 N.E. 832, 833 (Ohio 1912); *Gillmore v. Fitzgerald*, 26 Ohio St. 171, 175 (Ohio 1875) (holding that the plaintiff failed to prove the loss, contents, or substance of a missing deed "clearly and satisfactorily").[4] In Virginia, parol evidence may be used to show the existence and contents of a lost or destroyed instrument if the proof is "strong and convincing." *Baber v. Baber*, 94 S.E. 209, 213 (Va. 1917).

Given that we apply the summary judgment standard in deciding whether an arbitration agreement exists, *Berkeley*, 944 F.3d at 234, we must "view the evidence presented through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 244. Thus, the question is whether the evidence in the record could support a reasonable

---

[4] Despite these decisions by the Supreme Court of Ohio, some more recent cases have cast a faint shadow of uncertainty as to the standard of proof required for proving the existence of a lost or missing instrument in Ohio. For example, in *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins.*, 210 F.3d 672, 688 (6th Cir. 2000), the Sixth Circuit stated that, based on its "perusal" of cases cited by the parties and the district court, there was no "dispositive statute or Ohio Supreme Court case" as to the standard of proof for proving the existence and terms of a lost insurance policy. *Id.* Therefore, the Sixth Circuit upheld the district court's use of the preponderance of the evidence standard as making "practical sense" as it appeared "to represent the majority rule and can be said to reasonably anticipate the Ohio Supreme Court's position." *Id.*; *see also William Powell Co. v. Onebeacon Ins.*, 75 N.E.3d 909, 919 (Ohio Ct. App. 2016) (agreeing with *Lincoln* that the appropriate standard of proof is preponderance of the evidence). We make two points. First, ERG's counsel conceded at oral argument that a heightened standard of proof is applicable. Oral Arg. 8:43–9:03. Thus, any argument that a lower standard of proof is applicable has been waived. Second, we need not definitively resolve what the appropriate burden of proof is in Ohio because we are convinced that ERG has failed to carry its burden even under the lower preponderance of evidence standard.

jury finding that ERG has proven by "clear and conclusive evidence," *Bossio*, 785 S.E.2d at 841 (or "clear and convincing," *Arrington*, 43 S.W.2d at 704, "clear and satisfactory," *Umbenhower*, 97 N.E. at 833, or "strong and convincing," *Baber*, 94 S.E. at 213, evidence) that an agreement to arbitrate exists between the parties. *See Anderson*, 477 U.S. at 255–56.

B.

Turning to the record before us, we are satisfied that, as a matter of law, ERG has failed to establish the existence of an arbitration agreement between itself and Hill or the 71 FLSA opt-in plaintiffs for whom no arbitration agreements were produced. On appeal, ERG primarily relies on two pieces of evidence in arguing it has demonstrated, as a matter of law, that an arbitration agreement exists: Mr. Bates's affidavit and the 780 arbitration agreements that ERG produced. However, for the reasons explained below, such evidence falls far short of reaching the heightened standard for proving the existence of lost contracts under West Virginia, Kentucky, Ohio, and Virginia state law.

First, we turn to Mr. Bates's affidavit. Mr. Bates is ERG's Director of Human Resources. In his affidavit, Mr. Bates attests that all employees of ERG were required to review, agree to, and sign the arbitration acknowledgement form and that there were no exceptions to this policy. Mr. Bates attested to the training given to various managers who conduct the onboarding process for new employees and the fact they were given a checklist to complete, including ensuring that each employee had signed off on all company policies and procedures. Despite this evidence from Mr. Bates as to corporate policy, there is no

9

record evidence from any ERG employee who personally oversaw the onboarding process for Hill or the other 71 FLSA opt-in plaintiffs. Almost all businesses and corporations have human resources policies. And many of them would wish to believe that those policies are being strictly enforced. However, without testimony from those individuals that had first-hand knowledge of the onboarding process of Hill and the other 71 FLSA opt-in plaintiffs, Mr. Bates's evidence does little to prove the existence of an arbitration agreement between Hill and the 71 opt-in plaintiffs. Like the district court, we find that "[a] human resource official's expectations or assumptions about what happened during a hiring process conducted by individual managers on many dates, in many locations," is of little probative value. J.A. 2451.

Moreover, although ERG states that the 780 arbitration agreements between itself and current and former ERG employees that it produced is strong evidence of an agreement to arbitrate, we are not so persuaded. Notably, ERG has failed to explain the relevance of these agreements other than to make general assertions that the agreements suggested general compliance with ERG's corporate policy. Yet there is no evidence in the record that contextualizes these 780 arbitration agreements, such as the total number of employees ERG had for the relevant period or how compliant particular Applebee's restaurants were. When pressed on this point at oral argument before this Court, ERG's counsel could not point to any record evidence or provide the Court the total number of employees and therefore the estimated rate of compliance (i.e., the number of signed arbitration agreements versus the number of employees onboarded for the relevant period). Oral Arg. 6:28–45. It should go without saying that a numerator is of scant value without a

denominator. Therefore, without more contextualizing evidence, the 780 arbitration agreements are of little probative value as to whether an agreement to arbitrate exists between ERG and Hill and the other 71 FLSA opt-in plaintiffs.

In arguing that it has produced sufficient evidence, ERG principally relies on *Banks v. Mitsubishi Motors Credit of America, Inc.*, 435 F.3d 538 (5th Cir. 2005). There, the plaintiff-appellants brought various claims arising from the purchase of automobiles (and the obtaining of finance) from the defendant-appellees. The defendants sought to compel arbitration but could not provide signed arbitration agreements for several plaintiffs. Instead, the defendants primarily relied upon an affidavit from the auto dealership's president that stated that all customers were required to execute an arbitration agreement and could not have purchased automobiles without signing such an agreement. *Id.* at 539–40. The district court dismissed the motion to compel arbitration for those plaintiffs for which no signed arbitration agreement could be produced. On appeal, the Fifth Circuit reversed and held that the auto dealership president's affidavit was sufficient to prove, by a preponderance of the evidence, that an agreement to arbitrate existed between the parties. *Id.* at 540–41.

The decision in *Banks* is distinguishable from the current case for two reasons. First, the court in *Banks* was applying Mississippi's lower burden of proof for lost or destroyed instruments (preponderance of the evidence). West Virginia, Kentucky, Ohio, and Virginia have a higher burden of proof for lost or destroyed instruments, namely requiring clear and conclusive (or clear and convincing, clear and satisfactory, or strong and convincing) parol evidence. *See supra* Part II.A. Secondly, in *Banks*, the auto dealership president provided

11

an affidavit explaining that every customer was required to sign an arbitration agreement before purchasing a motor vehicle. Here, Mr. Bates, the Director of Human Resources at ERG, provided an affidavit of similar effect, stating that all new employees at ERG's many restaurants were required to sign the arbitration agreements as a condition of their employment with "no exceptions." J.A. 359. But unlike the president of the auto dealership in *Banks*, Mr. Bates was a corporate official removed from the day-to-day operations and the onboarding processes of the various Applebee's restaurants in West Virginia, Kentucky, Ohio, and Virginia. Therefore, Mr. Bates's "expectations or assumptions" as to the onboarding processes at individual Applebee's stores is insufficient to prove the existence of the arbitration agreements under those states' heightened standard. J.A. 2451.

## C.

Applying the summary judgment standard to the record in this case, we find there is no genuine issue of material fact; in other words, no reasonable jury could find that ERG has proven by clear and conclusive (or clear and convincing, clear and satisfactory, or strong and convincing evidence) evidence that an agreement to arbitrate exists between ERG and Hill and the 71 FLSA opt-in plaintiffs. As a result, we conclude that the district court did not err in holding that no agreement to arbitrate exists.[5]

---

[5] Even if we were to find there is a genuine issue of material fact, it is worth noting that ERG has never sought (either in the district court or on appeal) a trial on the question of whether an arbitration agreement exists. Instead, ERG has consistently maintained that an agreement to arbitrate exists as a matter of law. Given that we have concluded, as a matter of law, that no agreement to arbitrate exists, we need not address the question of

12

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

whether it is possible to waive the right to a trial under section 4 and, if so, whether ERG in fact did so. However, it is worth noting that the wording of section 4 suggests that if a genuine issue of material fact does exist as to whether an arbitration agreement was made, a district court is *obliged* to conduct a trial on the issue regardless of whether the movant sought a trial. 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court *shall* proceed summarily to the trial thereof" (emphasis added)); *see also Berkeley*, 944 F.3d at 235 ("[A]lthough no party requested a trial on the Arbitration Motion, we are satisfied that the court was *obliged* to conduct one . . . ." (emphasis added)); *Howard*, 748 F.3d at 978 ("One thing the district court may never do is find a material dispute of fact *does* exist and then proceed to *deny* any trial to resolve that dispute of fact.").