# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2753

_____

Nebraska Machinery Company

*Plaintiff - Appellee*

v.

Cargotec Solutions, LLC, formerly known as Kalmar Industries, USA, LLC

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 14, 2014
Filed: August 7, 2014

_____

Before SMITH, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Cargotec Solutions, LLC, ("Cargotec") appeals from the district court's determination that Cargotec's contract with Nebraska Machinery Company ("NMC") did not contain arbitration and indemnification provisions. We reverse and remand for the district court to hold a trial and resolve remaining fact issues.

## I.    BACKGROUND[1]

Cargotec, formerly known as Kalmar Industries, is in the business of manufacturing heavy machinery used in the shipping and container industry. NMC is an authorized dealer for Caterpillar, Inc., and specializes in the sales, rental, and servicing of Caterpillar equipment.

On March 23, 2007, Cargotec sent NMC purchase order number 754399 ("PO No. 1") for CAT C6.6 engines. PO No. 1 provided that "Standard Kalmar terms and conditions Form F-027 and Packing & Shipping Requirements Form F-058 will apply to this order. If you do not have a copy of these forms on file, please contact the buyer indicated." Form F-027 contained both an indemnification provision and an arbitration provision. The indemnification provision indicates:

> Seller agrees to indemnify, save and keep harmless the Buyer from and against any and all loss, damage, cost, charges or expenses including attorney fees or claims for the same which the Buyer may suffer or sustain or be in any way subjected to on account of . . . damage to or loss from or in any way connected with the products or services which are provided by seller pursuant to this contract.

The arbitration provision provides:

> At Buyer's sole election, any controversy or claim arising out of or related to this Purchase Order shall be resolved by arbitration under the Federal Arbitration Act and according to the Commercial Arbitration Rules of the American Arbitration Association (AAA) . . . . Notice of demand for arbitration shall be filed in writing with the seller and AAA.

NMC claims that it never received Form F-027.

---

[1]Similar to the district court, to the extent the parties have not objected, we primarily present the facts as outlined in the magistrate judge's order.

On March 28, 2007, in response to Cargotec's order, NMC sent Cargotec a purchase order ("NMC PO No. 1") and, on a separate form, an invoice for the sale of the engines. NMC PO No. 1 provides that the order is "SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE HEREOF WHICH SHOULD BE READ CAREFULLY AND COMPLETELY BEFORE SIGNING." These additional terms and conditions did not contain any indemnification or arbitration provisions. Cargotec claims that it received the invoice for the engines but never received NMC PO No. 1.

On April 20, 2007, the parties engaged in a transaction bearing many similarities to the first transaction. That is, Cargotec sent NMC purchase order number 754473 ("PO No. 2") containing similar language to PO No. 1. On April 25, NMC responded with its own purchase order (NMC PO No. 2) and separate invoice. NMC PO No. 2 contained similar terms to NMC PO No. 1. Again, similar to the first transaction, the parties claim they did not receive the other party's terms and conditions concerning the second purchase order. Subsequently, NMC delivered the engines to Cargotec, and Cargotec remitted payment for the engines.

In May and July 2007, Sharron Group, Inc. ("Sharron"), an authorized Cargotec dealer, sold six Cargotec yard trucks to Containerport Group, Inc. ("Containerport"). Cargotec equipped the yard trucks with CAT C6.6 engines purchased from NMC. Unsatisfied with the yard trucks' performance, Containerport sued Sharron in early 2009 in Ohio state court. On July 20, 2009, Sharron filed third-party claims against Cargotec and NMC, among other parties. Cargotec agreed to indemnify Sharron and was dismissed from the suit. On November 11, 2009, Cargotec sent NMC a letter demanding indemnification based upon the previous purchase order documents. NMC rejected Cargotec's demand. In February 2010, Sharron dismissed its claims against NMC.

On September 29, 2012, Cargotec filed a demand for arbitration against NMC in Kansas. Cargotec alleged that NMC had contractually agreed to indemnify Cargotec for losses associated with the purchased engines. As the basis for arbitration, Cargotec alleged NMC entered into arbitration agreements on March 23, 2007, and April 20, 2007, i.e., PO No. 1 and PO No. 2.

On November 8, 2012, NMC commenced action in the United States District Court for the District of Nebraska, seeking a declaration that Cargotec's demand for arbitration and indemnification was improper. Subsequently, NMC moved to dismiss or stay the arbitration proceedings and to determine arbitrability ("motion to determine arbitrability"), alleging that Cargotec's arbitration and indemnification provisions did not become part of the contract for the sale of goods between Cargotec and NMC. On December 21, 2012, Cargotec moved to compel arbitration. These motions were referred to a magistrate judge.

After concluding that it had jurisdiction to determine whether the parties entered into an arbitration agreement, the magistrate judge analyzed whether the arbitration and indemnification provisions became part of the parties' agreement under the Uniform Commercial Code (U.C.C.). According to the magistrate judge, two scenarios were possible: (1) "Nebraska Machinery received Cargotec's purchase orders and Cargotec received Nebraska Machinery's invoices[,] [but] [n]either party received any terms and conditions," or (2) "the parties are assumed to have received all documents sent." If the first scenario was the operative state of facts under the U.C.C., the magistrate judge determined that the parties were bound to arbitrate any dispute under the contract. However, the magistrate judge found that "the second scenario represents the most plausible explanation of the parties' interaction," and concluded the U.C.C. did not require NMC to arbitrate under such circumstances. Accordingly, the magistrate judge granted NMC's motion to determine arbitrability and denied Cargotec's motion to compel arbitration.

-4-

Cargotec objected to the magistrate judge's order. The district court conducted a de novo review of the magistrate judge's order and, although agreeing with many of the magistrate judge's findings and conclusions, the district court did not agree with the magistrate judge's assessment of the two scenarios, observing:

> The most the court can assume from the evidence presented is that there was a meeting of the minds as to purchase, sale, and payment. The parties go on and on about how they did not receive each others documents relating to terms and conditions. There are issues with Cargotec's argument that they sent these documents, when in fact the electronic systems were not available to Nebraska Machinery at that time, and further, not all the identification numbers for sales match up to the purchase orders/invoices. There is no definitive answer other than that. Cargotec wants the court to submit this issue to a trier of fact at trial. However, there are no facts to try. Everything has been submitted to the court. There is nothing to submit to the jury.

Therefore, in the district court's view, the contract consisted only of the purchase, sale, and payment for the engines. Accordingly, the district court granted NMC's motion to determine arbitrability, denied Cargotec's motion to compel arbitration, and entered judgment in NMC's favor. Cargotec appeals.

## II.    DISCUSSION

In this dispute concerning the formation of an arbitration agreement, "we review the district court's decision de novo." PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., 225 F.3d 974, 978 (8th Cir. 2000). "To the extent that the district court's order concerning arbitrability is based on factual findings, we review those findings for clear error." Id.

-5-

## A.     Arbitrability

Before reaching the merits of this dispute, Cargotec challenges the district court's authority to determine whether the parties agreed to arbitrate. According to Cargotec, an arbitrator, not the court, must determine issues of arbitrability. We disagree. As we have recognized in the past, "[t]o decide questions of arbitrability, we must determine whether a valid arbitration agreement exists between the parties and, if so, whether the subject matter of the dispute falls within the scope of the arbitration clause." Koch v. Compucredit Corp., 543 F.3d 460, 463 (8th Cir. 2008). "These issues are presumptively committed to judicial determination . . . ." Id. Although parties may eliminate that presumption by providing clear and unmistakable language to the contrary, AT&T Techs. v. Commc'n Workers of Am., 475 U.S. 643, 649 (1986), here, the parties did not do so.[2] Accordingly, whether the arbitration clause became part of the parties' agreement remains a question "presumptively committed to judicial determination." We now turn to that question.

---

[2]Cargotec relies on the disputed arbitration agreement itself in arguing that the parties intended to submit the present case to an arbitrator. Cargotec insists that because the arbitration provision incorporates the AAA's Commercial Rules of Arbitration, which vests an arbitrator with authority to determine its own jurisdiction, an arbitrator must determine arbitrability. In Fallo v. High-Tech Institute, we held that an arbitration provision that incorporated the AAA Rules was "a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court." 559 F.3d 874, 878 (8th Cir. 2009). However, Fallo did not address the threshold question we now confront: whether the arbitration agreement itself is valid. Thus, Cargotec's argument puts the cart before the horse, as it presumes the arbitration provision formed part of the contract at issue.

**B.      Merits**

Cargotec argues that, as a matter of law,[3] the parties agreed to arbitrate. However, even if the arbitration provision did not become part of the parties' contracts as a matter of law, Cargotec contends that the district court erred in failing to order a trial to resolve material factual disputes concerning whether the parties agreed to arbitration and indemnification. We agree with Cargotec's latter contention.

Although neither the magistrate judge nor the district court stated the legal standard that applied to the parties' competing motions, the motions should have been analyzed under a standard akin to competing motions for summary judgment. To be sure, in NMC's complaint, it sought a declaration that NMC was not required to arbitrate Cargotec's claims and that NMC incurred no contractual indemnity obligations as a result of Cargotec's purchase of the Caterpillar engines. When NMC filed its motion to determine arbitrability, it attached exhibits and affidavits to the motion. Cargotec opposed this motion and filed an affidavit, implying that it did not receive some of the operative contractual documents from NMC. Although not denominated as such, in substance, NMC filed a motion for summary judgment, and Cargotec opposed that motion in the usual summary judgment fashion. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1196 (3d ed.) ("[U]nder federal practice the technical name attached to a motion or pleading is not as important as its substance."); see also Evans v. McDonnell Aircraft Corp., 395 F.2d 359, 361 (8th Cir. 1968) ("Since both parties filed affidavits and exhibits in support of their respective positions, which were not excluded by the District Court, the

---

[3]Cargotec suggests that Kansas contract law applies to this dispute, but concedes that we need not engage in a choice-of-law analysis because, as the district court determined, "there is no discernible difference between Nebraska and Kansas [contract] law." NMC suggests Nebraska law applies but agrees that the relevant legal principles are the same. With no real conflict, and for the sake of brevity, we limit our discussion to Nebraska law.

motion to dismiss should properly have been treated as one for summary judgment."). Then, Cargotec moved to compel arbitration, citing materials outside the pleadings. NMC opposed this motion. See Tinder v. Pinkerton Security, 305 F.3d 728, 735 (7th Cir. 2002) ("The [Federal Arbitration Act ("FAA")] does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure."). Given that both parties relied on matters outside the pleadings and sought summary judgment-type rulings, a summary judgment standard–viewing the evidence and resolving all factual disputes in the nonmoving party's favor–should have been used to evaluate the motions.

However, this standard was never applied. After reviewing the evidence attached to the parties' competing motions, the magistrate judge analyzed two factual scenarios. Under the second scenario–the factual scenario the magistrate judge found the "most plausible"–the magistrate judge assumed the parties received all documents sent. When the district court reviewed the magistrate judge's order, it did not "totally agree" with either factual scenario. Indeed, the district court noted that the parties disputed whether they received each other's documents and "[t]here are issues with Cargotec's argument that they sent these documents, when in fact the electronic systems were not available to Nebraska Machinery at that time, and further, not all the identification numbers for sales match up to the purchase orders/invoices." Notwithstanding these observations, the district court determined "there are no facts to try" because "[e]verything has been submitted to the court." But there were facts left to try, namely determining which side was credible and resolving the factual disputes surrounding the documents the parties actually sent and received.[4] See, e.g.,

_____

[4]In determining that the second scenario was the most plausible, the magistrate judge indicated that the parties are presumed to have received all documents that were properly sent to them. See Am. Boat Co. v. Unknown Sunken Barge, 418 F.3d 910,

Jenkins v. S. Farm Bureau Cas., 307 F.3d 741, 744 (8th Cir. 2002) (determining "competing arguments, both in the form of affidavits, create a genuine issue of fact" on a particular issue); Star-Chronicle Pub. Co. v. United Press Ass'ns, 204 F. 217, 224 (8th Cir. 1913) (determining that question of whether letter was received properly submitted to trier of fact in contracts case).

A brief review of the relevant U.C.C. provisions reveals why this factual dispute requires resolution. The U.C.C. provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Neb Rev. Stat. U.C.C. § 2-204(1). Unless the language or circumstances unambiguously indicate otherwise, "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." Id. § 2-206(1)(a). In a battle of the forms situation, like we have here, an expression of acceptance that is sent within a reasonable amount of time shall operate as an acceptance, even if it contains additional and different terms, "unless acceptance is expressly made conditional on assent to the additional or different terms." Id. § 2-207(1). If acceptance is expressly made conditional on assent to the additional or different terms, the acceptance acts as a non-binding counter-offer. PCS Nitrogen Fertilizer, 225 F.3d at 979. Finally, if the writings between parties do not form a contract but the parties' actions indicate a contract has been formed, § 2-207(3) directs that "the terms of the particular

_____

914 (8th Cir. 2005) (holding that a presumption of delivery applies to reliable forms of electronic communication). However, even if a legal presumption of delivery arises, "it may be rebutted by any relevant evidence and positive testimony that a letter was not received[,] [which] simply raises a question of fact to be decided by the trier of fact. Troy & Stalder Co. v. Cont'l Cas. Co., 290 N.W.2d 809, 812 (Neb. 1980). Here, the affidavits rebutted any presumption of delivery. See Am. Boat Co., 418 F.3d at 914 (recognizing "it is never easy to prove a negative" and "there is often little a party can do except swear he or she did not receive the communication" (quotation omitted)).

contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the Uniform Commercial Code."

Both the magistrate judge and the district court determined that the parties' writings did not form a contract but concluded that the parties' conduct created a contract under § 2-207(3). What if, however, the factual disputes had been resolved according to the magistrate judge's first scenario–that is, NMC received Cargotec's purchase orders and Cargotec received NMC's invoices, but neither party received any terms and conditions? Under these circumstances, the magistrate judge reasoned that the contract contained the arbitration provision. Likewise, what if NMC had received all of Cargotec's documents, including Form-027, and Cargotec only received NMC's invoices? This state of the facts is not merely hypothetical, but the standard upon which the district court should have evaluated NMC's initial motion, viewing the evidence in the light most favorable to Cargotec and resolving all factual disputes in its favor. And, in this light, it may have been unnecessary to resort to § 2-207(3) for contract formation, as the writings may have formed a contract and possibly included the arbitration clause. See Neb. Rev. Stat. U.C.C. § 2-206(1)(a) ("an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances"). Recognizing the various contractual possibilities that exist when the facts are in limbo, the Tenth Circuit recently confronted an FAA case with similar factual unknowns, opining, "without factual findings about what was said and whose story to credit . . . we don't know whether the parties agreed to arbitrate a dispute like this one." Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 979 (10th Cir. 2014). The instant case presents the same difficulties in applying the U.C.C.

Although we think issues of fact precluded proper application of the U.C.C., NMC argues that the FAA does not permit a jury trial to be held in present circumstances. While NMC is correct that a *jury* trial is not presently available, a

-10-

close reading of the FAA indicates that a *bench* trial resolving the factual disputes is necessary. Indeed, the FAA provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." Id. At times, a district court may "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." Howard, 748 F.3d at 978. To this end, "the [FAA's] summary trial can look a lot like summary judgment." Id. However, if the motions record reveals a material issue of fact, the FAA maintains that the court move summarily to trial. Id. And, when that trial is not demanded by the party opposing arbitration, "the court shall hear and determine such issue." 9 U.S.C. § 4.

Here, because NMC resisted Cargotec's demand for arbitration–"the party in default"–only it, and not Cargotec, had the statutory authority to demand a jury trial. But that reality only obviated the prospect of a jury trial, not a bench trial. The same factual disputes that appeared in NMC's motion to determine arbitrability also became apparent through Cargotec's motion to compel arbitration. In the end, the district court never resolved the factual issues concerning the making of the contract but merely recognized their existence. Therefore, because issues of fact remained on the formation of the arbitration agreement, the district court erred in failing to summarily proceed to trial on those issues as the FAA instructs. See Howard, 748 F.3d at 980 (determining that, after fact issues appeared through summary judgment, the district court erred in not ordering a bench trial where "the court must lift that thumb from the scales, evaluate the conflicting evidence even-handedly, and decide which side's account is more likely true").

## III.  CONCLUSION

We vacate the district court's July 15, 2013, order and corresponding entry of judgment in NMC's favor.  We remand for the district court to hold a non-jury trial, make findings of fact, and apply the appropriate U.C.C. provisions in light of those facts.

_____