# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3392
_____

Adaeze Duncan

*Plaintiff - Appellee*

v.

International Markets Live, Inc.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: September 22, 2021
Filed: December 10, 2021
[Published]
_____

Before KELLY, ERICKSON, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Adaeze Duncan sued International Markets Live, Inc. (IML) in state court, asserting claims for breach of contract, promissory estoppel, unjust enrichment, equitable estoppel, and fraudulent misrepresentation. IML removed the case to federal court, answered Duncan's complaint and filed counterclaims, and then moved to compel arbitration. Viewing the record in the light most favorable to Duncan, the

district court found that there was a genuine dispute of material fact as to whether the parties had agreed to arbitrate and denied the motion. We have jurisdiction to review IML's appeal of that decision, see 9 U.S.C. § 16(a)(1)(B), and we now remand to the district court for a trial to determine whether an arbitration agreement exists.

I.

IML provides tools for and information about trading foreign currencies and cryptocurrencies. It operates an educational platform and distributes its products to customers under a direct sales model, on a subscription basis. To do so, IML contracts with individuals as Independent Business Owners (IBOs) through its website. IML asserts that an IBO's work with IML is governed by IBO Agreements, which it says incorporate IML's Terms and Conditions and Policies and Procedures. Since 2016, IML has used three different versions of its Terms and Conditions and Policies and Procedures. Two of the three versions combined the Terms and Conditions and Policies and Procedures into a single document, and one—the most recent—provided them as two separate documents. All three versions of the Terms and Conditions included an arbitration provision.

Duncan became an IBO with IML in July of 2016 by registering through IML's website. IML contends that, when Duncan registered, she would have been required to agree to the arbitration provision. In support of this assertion, IML offers the affidavit of its Chief Operations Officer, Kyle Lowe, who attests that, when opening her account, "Duncan was required to agree to the Terms and Conditions and Policies and Procedures" and "was required to actively click boxes confirming that she completely read and fully agreed to the Terms and Conditions and Policies and Procedures." IML provides an example of the IBO registration screen, which includes the following statements: "I have completely read and fully agree to the International Markets Live Inc. Policies and Procedures" and "I have completely read and fully agree to the International Markets Live Inc. Terms and Conditions." IML

has not provided the actual registration screen Duncan saw when she registered but avers that the version provided is "substantially identical." Duncan recalls following multiple steps, clicking boxes, and filling out forms to become an IBO, but she does not recall the exact language contained in these boxes or forms. In an affidavit, she states that she never saw the IBO registration screen produced by IML in this litigation and that she did not receive or view any Terms and Conditions or Policies and Procedures associated with any IBO agreement.

IML sent a termination letter to Duncan on June 17, 2019, and Duncan sued IML in the Iowa District Court for Polk County on October 22, 2019. After removing the case to federal court, IML filed an answer and amended answer, which asserted several counterclaims but did not raise the issue of arbitration. Once Duncan answered those counterclaims, IML filed a second amended answer—containing a claim for arbitration—and moved to compel arbitration.

The district court denied IML's motion. "Viewing all factual disputes in the light most favorable to Duncan," the court found that there was "a genuine issue of material fact" as to whether the parties had an agreement to arbitrate. Of importance to the district court was IML's failure to produce the actual registration screen that Duncan saw and Duncan's affirmative assertion that she had never seen the terms constituting the offer.

II.

On appeal, we review de novo the denial of a motion to compel arbitration. Shockley v. PrimeLending, 929 F.3d 1012, 1017 (8th Cir. 2019). To the extent the district court's ruling on arbitration is based on factual findings, we review those findings for clear error. Neb. Mach. Co. v. Cargotec Sols., LLC, 762 F.3d 737, 740 (8th Cir. 2014) (quoting PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C., 225 F.3d 974, 978 (8th Cir. 2000)).

"Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists 'and the dispute falls within the scope of that agreement.'" Shockley, 929 F.3d at 1017 (quoting Berkley v. Dillard's Inc., 450 F.3d 775, 777 (8th Cir. 2006)). The Federal Arbitration Act (FAA) "establishes 'a liberal federal policy favoring arbitration agreements.'" Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Section 4 of the FAA authorizes a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When presented with such a petition or motion, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

But despite arbitration's "favored status," a party cannot be compelled to arbitrate unless it has contractually agreed to be bound by arbitration. Shockley, 929 F.3d at 1017; see also Northport Health Servs. of Ark., LLC v. Posey, 930 F.3d 1027, 1030 (8th Cir. 2019) ("While any doubts concerning the scope of [arbitrable] issues should be resolved in favor of arbitration, a party who has not agreed to arbitrate a dispute cannot be forced to do so." (cleaned up) (quoting Lyster v. Ryan's Fam. Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001))). Thus, the primary inquiry is "whether the parties formed a valid contract that binds them to arbitrate their dispute." Shockley, 929 F.3d at 1017. And the party seeking to compel arbitration—here IML—bears the burden of proving that there was a valid and enforceable agreement. Id.

When parties submit affidavits in conjunction with a motion to compel arbitration, the district court treats the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant. See Neb.

Mach., 762 F.3d at 741–42 (explaining that such treatment is warranted where the parties rely on matters outside the pleadings).  Here, the district court's task was to determine whether the parties had an agreement to arbitrate under Iowa law[1] and, if so, what that agreement covered.  See Foster v. Walmart, Inc., 15 F.4th 860, 862 (8th Cir. 2021).  Viewing the record in the light most favorable to Duncan, the district court found that material facts remain in dispute as to whether the parties agreed to arbitrate.[2]

The next step should have been to hold a trial.  See 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . [is at] issue, the court shall proceed summarily to the trial thereof."); see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019) (referring to § 4 as the "Trial Provision").  For example, in Nebraska Machinery, the district court denied a motion to arbitrate, finding that there was "no definitive answer" about whether the parties had agreed to arbitrate, but also ruling that "there [were] no facts to try" because "[e]verything ha[d] been submitted to the court."  762 F.3d at 740, 742.  We rejected this conclusion, explaining that "there were facts left to try, namely determining which side was credible and resolving the factual disputes surrounding the documents the parties actually sent and received."

_____

[1]Arbitration is a matter of contract law, and Iowa law governs this case.  See Shockley, 929 F.3d at 1017.  Iowa law requires an enforceable agreement to contain an offer, acceptance, and consideration.  See Margeson v. Artis, 776 N.W.2d 652, 655 (Iowa 2009).

[2]Duncan attempts to frame the district court's order differently, contending that there is "no outstanding issue of fact," and she argues that no trial is warranted because the district court simply concluded that IML had not met its burden of showing that an enforceable arbitration agreement existed.  However, the district court repeatedly stated that there was a "genuine issue of material fact" and then concluded that it was "foreclosed from compelling arbitration."  And the district court reached this conclusion when viewing the evidence in the light most favorable to Duncan.  At a trial, the burden would remain with IML, but there would be no thumb on the scale in Duncan's favor.

Id. at 742.  We thus remanded the case and directed the district court to hold a trial and make the necessary findings of fact.[3]  Id. at 744.

Because § 4 mandates that a trial be held to determine whether the parties entered a valid arbitration agreement, we remand this matter to the district court for further proceedings.[4]  See Jin, 966 F.3d at 827 (explaining that the arbitrability of a dispute is a "gateway" issue and that "the parties are entitled to have the correct venue—court or arbitration—established at the outset").

---

[3]Other circuits have similarly held that § 4 requires the district court to proceed to trial when factual disputes exist.  See, e.g., Boykin v. Fam. Dollar Stores of Mich., LLC, 3 F.4th 832, 844 (6th Cir. 2021) (reversing district court's grant of motion to compel arbitration and determining that the plaintiff was entitled to a trial on the issue because he identified genuine disputes of material fact); Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 672 (9th Cir. 2021) ("[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved."); Jin v. Parsons Corp., 966 F.3d 821, 827 (D.C. Cir. 2020) ("[W]e conclude that under § 4, a district court, upon finding that a genuine dispute of material fact exists as to 'the making of the arbitration agreement,' including whether the parties assented to the agreement, should proceed summarily to trial solely on the issue of arbitrability."); Berkeley Cnty. Sch. Dist., 944 F.3d at 235 ("[A]lthough no party requested a trial on the Arbitration Motion, we are satisfied that the court was obliged to conduct one, in that genuine disputes of material fact exist regarding whether [the plaintiff] agreed to arbitrate the claims alleged in the Operative Complaint.").

[4]Duncan argues that the district court's order should be affirmed because her claims do not fall within the scope of any purported arbitration agreement and, alternatively, because IML waived its right to compel arbitration by substantially invoking the litigation machinery before asserting its arbitration right.  The district court did not address these arguments, and we decline to do so for the first time on appeal.

## III.

For the foregoing reasons, we remand for a trial pursuant to 9 U.S.C. § 4 on the arbitrability issue.

_____