# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1820
_____

Anhui Powerguard Technology Company, Limited

*Plaintiff - Appellee*

v.

DRE Health Corporation

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 9, 2024
Filed: March 14, 2024
_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Anhui Powerguard Technology Company, Limited, filed a breach-of-contract action alleging that DRE Health Corporation failed to remit payment for over $9

___

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

million in purchase orders that Anhui had fulfilled. The district court[2] denied DRE Health's motion to stay litigation and compel arbitration under the Federal Arbitration Act (FAA). DRE Health appeals that order. Having jurisdiction under 9 U.S.C. § 16(a)(1)(B), we find that the parties did not agree to submit their dispute to arbitration and accordingly affirm.

I.

Anhui is a Chinese manufacturer that produces personal protective equipment (PPE), including disposable gloves.[3] DRE Health, a PPE wholesaler, contracted with Anhui in December 2020 to import bulk shipments of disposable gloves with the intention of reselling the goods in the United States. By March 2021, Anhui had fulfilled four purchase orders totaling more than $9 million, but DRE Health was unable to pay down its debt. The parties subsequently executed a novation in which Anhui agreed to reduce the amount DRE Health owed by approximately $3.1 million in exchange for DRE Health's promise to purchase additional shipments of gloves. The agreement set forth an installment schedule for the remaining $5.9 million balance pursuant to which DRE Health was required to remit $1.97 million within five business days of June 23, 2021, $1.965 million before July 21, 2021, and an additional $1.965 million before August 21, 2021. The agreement also provided:

> AFTER THE INITIAL PAYMENT OF $1,970,000.00 USD AND IN CONSIDERATION OF FUTURE PAYMENT COMMITMENTS, ANHUI POWERGUARD AGREES TO RELEASE DRE Health FROM ALL LEGAL CLAIMS (GRANTED DRE COMPLETES

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[3]The district court did not engage in factfinding relating to the merits of the parties' dispute; we thus recite and accept as true the facts as they are alleged in the complaint. Koch v. Compucredit Corp., 543 F.3d 460, 463 (8th Cir. 2008) ("Because the district court's decision was based on the complaint alone, and did not involve any determination of disputed factual issues, we review this decision *de novo*, accepting as true the allegations in the complaint.").

INSTALLMENT PAYMENTS), AGREE THAT THE VENUE FOR ANY FUTURE DISPUTES SHALL BE BINDING ARBITRATION WITH HONG KONG INTERNATIONAL ARBITRATION CENTRE (HKIAC) UNDER THE TERMS OF ORIGINAL PO, AND AGREE TO DELIVER NITRILE GLOVES TO DRE Health . . .

In June 2022, Anhui filed a diversity action in federal court alleging that DRE Health breached the agreement by remitting only a single $1 million payment on September 11, 2021. DRE Health responded with a motion to stay litigation and compel arbitration pursuant to the agreement's arbitration clause. The district court denied the motion upon finding that the prefatory phrase, "AFTER THE INITIAL PAYMENT OF $1,970,000.00 USD," served as a condition precedent to the three obligations enumerated in the agreement, including Anhui's agreement to submit any future disputes to binding arbitration. Because DRE Health did not complete the initial $1.97 million installment payment, there consequently was no contract between the parties to arbitrate. The district court also found that the inclusion of the prefatory phrase in the agreement vitiated any "clear and unmistakable" evidence that the parties intended to submit the threshold issue of arbitrability to an arbitrator. DRE Health now appeals.

## II.

"On appeal, we review de novo the denial of a motion to compel arbitration." Duncan v. Int'l Mkts. Live, Inc., 20 F.4th 400, 402 (8th Cir. 2021) (per curiam). "Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists 'and the dispute falls within the scope of that agreement.'" Shockley v. PrimeLending, 929 F.3d 1012, 1017 (8th Cir. 2019) (citation omitted). "But despite arbitration's 'favored status,'" Duncan, 20 F.4th at 402 (citation omitted), "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," Parm v. Bluestem Brands, Inc., 898 F.3d 869, 873 (8th Cir. 2018) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)). The threshold inquiry, therefore, is whether the parties contractually agreed to arbitrate their dispute. Shockley, 929 F.3d at 1017. DRE Health, as the party

seeking to compel arbitration, bears the burden of proving that such an agreement exists and is enforceable. Id. Further, "state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." Donaldson Co. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009). Anhui and DRE Health agree that Missouri law applies.

A.

"The FAA places arbitration agreements on an equal footing with other contracts, and courts will examine arbitration agreements in the same light as they would examine any contractual agreement." Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776 (Mo. 2005) (en banc). Thus, "in determining whether the parties have entered into a valid agreement to arbitrate," Missouri courts apply "the usual rules of state contract law and canons of contract interpretation." Id. The parties here do not dispute that the prefatory phrase in the agreement, "AFTER THE INITIAL PAYMENT OF $1,970,000.00 USD," is a condition precedent. See Lowery v. Air Support Int'l, Inc., 982 S.W.2d 326, 329 (Mo. Ct. App. 1998) ("A condition precedent is a condition which must be fulfilled before the duty to perform an existing contract arises. . . . '[N]o promise based upon a condition can be enforced as such until the contingency upon which it depends has happened.'" (citation omitted) (alteration in original)). Their disagreement, rather, centers on the reach of the prefatory phrase to the three distinct obligations that the agreement imposes: (1) Anhui agrees to release DRE Health from all legal claims provided that DRE Health remits the three installment payments; (2) Anhui agrees to submit any future dispute to arbitration; and (3) Anhui agrees to deliver additional shipments of gloves to DRE Health.

DRE Health contends that the prefatory phrase functions as a condition precedent only to Anhui's obligation to release all legal claims. That is, the parties intended to create alternative methods of dispute resolution, such that the failure of

-4-

DRE Health to complete the initial $1.97 million installment payment would relieve Anhui of its duty to release DRE Health from its legal obligations but would not impact the parties' independent agreement to arbitrate. Anhui, on the other hand, submits that the prefatory phrase extends to all three obligations, and DRE Health's failure to remit the initial installment payment relieves Anhui of its duty to submit the dispute to arbitration. We find that Anhui's interpretation accords with the logical and most natural reading of the agreement.

The series-qualifier canon guides our analysis. See generally Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012). It instructs: "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive . . . modifier normally applies to the entire series." State v. Champagne, 561 S.W.3d 869, 873 (Mo. Ct. App. 2018) (citation omitted); see also United States v. Loyd, 886 F.3d 686, 688 (8th Cir. 2018) ("The series-qualifier canon 'requires a modifier to apply to all items in a series when such an application would represent a natural construction.'" (citation omitted)). The Supreme Court has found that the canon "generally reflects the most natural reading of a sentence," Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1169 (2021), and this Court has noted that it can "reinforce[]" plain meaning, United States v. Wilkins, 25 F.4th 596, 600 (8th Cir. 2022).

Here, the verbs "agrees" or "agree" precede all three obligations in the contract, which indicates a parallel construction. See Parallel, Meriam-Webster's Collegiate Dictionary (11th ed. 2020) (defining "parallel" as "similar, analogous," "readily compared," "having identical syntactical elements in corresponding positions"). Moreover, the three obligations form a series because they pertain to a common subject matter: the business relationship between the parties. Cf. Jama v. Immig. & Customs Enf't, 543 U.S. 335, 344 n.4 (2005) (using "receives, possesses, or transports" to illustrate the concept of an "integrated list" (citation omitted)); Lockhart v. United States, 577 U.S. 347, 352 (2016) ("A reader intuitively applies 'of the United States' to 'the laws,' 'the treaties' and 'the constitution' because (among other things) laws, treaties, and the Constitution are often cited together,

because readers are used to seeing 'of the United States' modify each of them, and because the listed items are simple and parallel without unexpected internal modifiers or structure.").

The agreement also contains other syntactical elements that counsel in favor of Anhui's interpretation. First, a comma separates each obligation rather than a period or semicolon; while the latter two punctuation marks could suggest that each item within the series should be construed separately, the use of commas implies the opposite. Alpern v. Ferebee, 949 F.3d 546, 550 (10th Cir. 2020) (holding that the terms "along roads or trailsides" modified the entire series of activities enumerated in a statute, including "parking" and "picnicking," as "[e]ach element is separated only by a comma, and no words or punctuation interrupt the series' nouns . . . [and] [n]o odd punctuation breaks up the series' flow."); cf. Facebook, 141 S. Ct. at 1170 ("[A] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one."). Second, the word "and" precedes the final obligation in the agreement requiring Anhui to deliver additional shipments of gloves to DRE Health, the "most natural reading of" which "is conjunctive—'along with or together with.'" United States v. Pulsifer, 39 F.4th 1018, 1021 (8th Cir. 2022) (citation omitted), cert. granted, 143 S. Ct. 978 (2023); see also United States v. Garcon, 54 F.4th 1274, 1278 (11th Cir. 2022) (en banc) ("[W]hen 'and' is used to connect a list of requirements, the word ordinarily has a 'conjunctive' sense, meaning that all the requirements must be met.").

In sum, we conclude that the three obligations in the agreement should be construed as a whole and thus are all modified by the prefatory phrase, "AFTER THE INITIAL PAYMENT OF $1,970,000.00 USD." To be sure, while canons of construction are "useful tools" of interpretation, they do not serve as "inflexible rules." Facebook, 141 S. Ct. at 1175 (Alito, J., concurring). Further, the series-qualifier canon is "highly sensitive to context." Id. at 1174. But the circumstances of the parties' contractual relationship, together with the structure of the agreement's language, renders the canon an apposite interpretative tool to determine the reach of

the prefatory phrase.  To this end, DRE Health points to no alternative canon or grammatical guidepost to support its strained, unintuitive reading of the agreement.

B.

DRE Health additionally argues that construing the prefatory phrase as a condition precedent to arbitration would "greatly limit to the point of absurdity the scope of arbitrable issues."  We are unconvinced.  By contending that there would be no reason to arbitrate if it were required to remit the initial $1.97 million installment payment, DRE Health ignores the remaining obligations in the agreement; namely, that DRE Health must make two further payments, and that Anhui must deliver additional orders of gloves.  The failure of the parties to fulfill the respective ends of their bargain could give rise to future arbitrable disputes.  Equally unpersuasive is DRE Health's argument that applying the prefatory phrase to all three obligations would "require Anhui to release DRE [Health] from all legal claims before any issue is arbitrable."  The language used in the agreement includes the qualification, "(GRANTED DRE COMPLETES INSTALLMENT PAYMENTS)," indicating that the parties created a conditional release.  Put differently, Anhui's promise to release DRE Health from its legal claims is conditioned upon DRE Health's completion of the three installment payments.  Thus, the legal release would be without effect if DRE Health failed to adhere to the installment schedule, and the parties could arbitrate their dispute regarding the outstanding balance.

While DRE Health is correct that Missouri law disfavors conditions precedent, courts must so construe a contract provision if "required to do so by plain, unambiguous language or by necessary implication."  Kan. City S. Ry. Co. v. St. Louis-S.F. Ry. Co., 509 S.W.2d 457, 460 (Mo. 1974).  Pursuant to the conventional rules of grammar and the intention of the parties as discerned from the structure of the agreement, and accepting as true the allegation that DRE Health failed to remit the initial $1.97 million installment payment, Anhui accordingly had no obligation to submit its breach-of-contract claim to arbitration.

## III.

DRE Health next asserts that the district court erred by determining the threshold issue of arbitrability. By making this argument, however, DRE Health "puts the cart before the horse, as it presumes the arbitration provision formed part of the contract at issue." Neb. Mach. Co. v. Cargotec Sols., LLC, 762 F.3d 737, 741 n.2 (8th Cir. 2014). As discussed previously, DRE Health's failure to remit the initial $1.97 million installment payment relieved Anhui of its duty to arbitrate; the absence of an agreement to arbitrate necessarily forecloses any argument that the parties delegated the issue of arbitrability to an arbitrator. See Koch, 543 F.3d at 463 ("To decide questions of arbitrability, we must determine whether a valid arbitration agreement exists between the parties . . . ."). The district court did not err by deciding the issue.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____