# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1533

_____

Jabbok Schlacks; William Schlacks

*Plaintiffs - Appellees*

v.

Neil Chheda; Schlacks 2020 Transfer, LLC; RC Opportunity, LLC

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: December 18, 2025
Filed: April 29, 2026

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jabbok and William Schlacks ("the Schlacks brothers") are co-founders, directors, and substantial shareholders of EquipmentShare.com, Inc. ("EquipmentShare"). Neil Chheda is a venture capital investor who is a substantial shareholder in EquipmentShare and serves as one of its directors. Chheda also manages Schlacks 2020 Transfer, LLC ("Transfer") and RC Opportunity, LLC ("RC

Opportunity"). Chheda, Transfer, and RC Opportunity appeal the denial of their motion to compel arbitration against the Schlacks brothers. We affirm.

## I. Background

This dispute concerns three contracts—two option agreements and a partnership agreement—related to the establishment of an EquipmentShare venture capital fund.

In late 2020, with the permission of the EquipmentShare board of directors, Chheda crafted a plan to establish the venture capital fund and capitalize it using EquipmentShare shares. Specifically, the Schlacks brothers would receive EquipmentShare common stock under an Equity Bonus Plan, then convey a portion of that stock to Transfer. Transfer would, in turn, use that stock to fund the new EquipmentShare venture capital fund. In December 2020, the Schlacks brothers each signed an option agreement with Transfer that gave Transfer the option to acquire one third of the shares that the brothers were scheduled to receive under the Equity Bonus Plan. Chheda signed the option agreements on behalf of Transfer.

At Chheda's suggestion, the parties amended the option agreements twice, in June 2021 and December 2022. The second amendment changed certain dates and doubled the number of shares in EquipmentShare that Transfer would receive. The Schlacks brothers claim they were unaware of the modified shares provision because Chheda misled them by telling them that the second amendment only affected dates, not the number of shares.

Two months before signing the second amendment, the Schlacks brothers and Chheda worked together on a third contract—the TKF II L.P. partnership agreement—that established the planned venture capital fund as a limited partnership organized under Delaware law. On October 28, 2022, TKF II L.P.'s partners signed the partnership agreement. All of the TKF II L.P. partners are corporate entities associated with the Schlacks brothers and/or Chheda: TKF II GP,

LLC (a company managed by the Schlacks brothers); EquipmentShare; Arken, LLC (a company owned by the Schlacks brothers); and RC Opportunity. The partnership agreement provided that it "shall be binding upon . . . the heirs, executors, administrators, personal or legal representatives, successors and assigns of the respective parties hereto" and that "[a]ll questions concerning [its] construction, interpretation and validity" should be "governed by and construed and enforced in accordance with" Delaware law. It also included an arbitration clause stating that "[a]ny claim, dispute or controversy of whatever nature arising out of or relating to this Agreement . . . shall be settled by arbitration . . . under and pursuant to . . . JAMS' Comprehensive Arbitration Rules and Procedures." The JAMS rules reserve certain threshold questions of arbitrability—including the question of "who are proper Parties to the Arbitration"—to the arbitrator, "[u]nless the relevant law requires otherwise."

In February 2024, Transfer attempted to exercise its right to purchase the shares under the terms of the amended option agreements. The Schlacks brothers refused to tender the shares on the basis that the second amended option agreement was invalid. Chheda, Transfer, and RC Opportunity ("the defendants") filed for arbitration with JAMS pursuant to the partnership agreement. The Schlacks brothers sued the defendants and moved for preliminary and permanent injunctions against the arbitration proceeding. The defendants, in turn, moved to compel arbitration. The district court[1] denied all three motions; the defendants appeal the denial of their motion to compel arbitration.

## II. Discussion

We review a district court's denial of a motion to compel arbitration *de novo* and its factual findings for clear error. *GP3 II, LLC v. Litong Cap., LLC*, 35 F.4th 1124, 1126 (8th Cir. 2022). On appeal, the defendants argue that the district court

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

erred (1) by deciding the arbitrability question in the first instance, rather than reserving it for an arbitrator and (2) by concluding that Delaware equitable estoppel and agency law principles did not compel arbitration of the parties' dispute. We affirm in both respects.

## A.

We first address whether the district court properly decided the matter of arbitrability instead of delegating the question to a JAMS arbitrator. "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citation modified). Before referring a dispute to an arbitrator, a court must determine whether a valid arbitration agreement exists. *Id.* (citing 9 U.S.C. § 2). "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* The party seeking to compel arbitration bears the burden of proving the existence of a "valid contract that binds [the parties] to arbitrate their dispute." *Duncan v. Int'l Mkts. Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021). We apply state contract law—here, that of Delaware—to determine whether the parties have agreed to arbitrate a matter. *See Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999).

The district court found that the Schlacks brothers did not agree to delegate any aspect of this dispute to an arbitrator because they are not parties to the partnership agreement. On appeal, the defendants argue that the district court erred in reaching the arbitrability question. They point out that the partnership agreement provides that arbitration is to be conducted pursuant to the JAMS rules and that the JAMS rules reserve such questions—including the question of "who are proper Parties to the Arbitration"—to the arbitrator. Because the partnership agreement delegates arbitrability questions to the arbitrator, the defendants argue that the district court erred by failing to honor that delegation.

-4-

The Schlacks brothers concede—and we assume—that the partnership agreement delegates arbitrability questions to the arbitrator because it incorporates the JAMS rules. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) ("By incorporating the [rules of an arbitration association], the parties agreed to allow the arbitrator to determine threshold questions of arbitrability."), *abrogated on other grounds by Smith v. Spizzirri*, 601 U.S. 472 (2024); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (finding that every circuit to address a similar question had found "'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability'").

Nonetheless, the defendants' argument fails because a valid arbitration agreement does not exist between the Schlacks brothers and the defendants. The Supreme Court has made clear that, although parties may agree to delegate arbitrability questions, this delegation is contingent on the existence of a valid arbitration agreement. *Henry Schein*, 586 U.S. at 69 (emphasizing that a court must first determine whether a valid agreement exists before enforcing an arbitration agreement—even as to threshold questions of arbitrability); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce.") The Schlacks brothers are not parties to the partnership agreement; the TKF II L.P. partnership agreement was entered into only by TKF II GP, LLC; EquipmentShare; Arken, LLC; and RC Opportunity. Therefore, the Schlacks brothers did not agree to delegate the arbitrability question.

The defendants' arguments to the contrary are unpersuasive. They argue that the questions of "who are proper parties to the arbitration" and "whether the subject matter of this dispute is within the scope of the arbitration provision" are both questions for the arbitrator. But regardless of whether these questions are within the scope of the delegation provision, the court cannot enforce that provision unless a valid contract exists between the parties. *See Blanton*, 962 F.3d at 848 (noting that if a non-signatory opposes arbitration, the arbitrability question "goes to the very existence of a valid arbitration agreement and thus the court must itself resolve the

question even if the agreement incorporates" an arbitration association's rules (citation modified)).  Such a contract does not exist here.

The defendants also point to two Eighth Circuit decisions: (1) *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098 (8th Cir. 2014), where we found that a delegation provision delegated to an arbitrator the issue of whether a non-signatory could compel arbitration, *id.* at 1100; and (2) *Sadler v. Green Tree Servicing, LLC*, 466 F.3d 623 (8th Cir. 2006), where we found that a delegation provision delegated to an arbitrator the issue of whether a non-signatory could be compelled to arbitrate, *id.* at 625-26.  Both cases are inapposite.

*Eckert/Wordell* involved an architectural services contract where a corporate entity contracted with an architect to design a building.  756 F.3d at 1099.  The corporate entity that initially entered into the contract transferred the property's title to a different corporate entity owned by the same shareholders.  *Id.*  We found that the architectural services contract had properly delegated to the arbitrator the question of whether the second entity could compel arbitration even though the second entity had not actually signed the contract.  *Id.* at 1100.  *Eckert/Wordell* is a far cry from the circumstances here.  The defendants do not allege that any of the corporate signatories transferred their role in the partnership to the Schlacks brothers.

*Sadler* involved a mortgage contract that a woman entered into while she was single.  466 F.3d at 624.  The woman later married and lived with her husband in the mortgaged home.  *Id.*  The mortgage contract included an arbitration provision which provided that "[a]ny controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s)."  *Id.*  As relevant, the *Sadler* district court held that (1) the husband could not be compelled to arbitrate because he was not a party to the contract and (2) the couple's foreclosure claims were not otherwise subject to arbitration.  *Id.*  We concluded that the contract had reserved arbitrability questions for the arbitrator; we did not separately analyze whether the non-signatory husband was subject to the arbitration provision.  *Id.* at 626.  The defendants argue that *Sadler*

requires us to find that the Schlacks brothers, like the non-signatory husband, must submit to an arbitrator's determination of threshold arbitrability questions. This interpretation—which reads into *Sadler* a rule that simply does not appear there— would place us outside the bounds set by the Supreme Court, which, in the years since we decided *Sadler*, has made clear that the enforceability of an arbitrability delegation is contingent on the existence of a valid agreement. *See Henry Schein*, 586 U.S. at 69.

Neither *Eckert/Wordell* nor *Sadler* addressed a situation like the one presented here—where a signatory to an arbitration agreement seeks to use that agreement to compel arbitration against two non-signatories in a dispute that centers around two independent and preexisting contracts and where neither non-signatory has assumed the legal rights and obligations of an original party to the arbitration agreement. We therefore find no "clear and unmistakable evidence" that the defendants and the Schlacks brothers agreed to "arbitrate arbitrability." *See Henry Schein*, 586 U.S. at 72. Thus, the district court properly decided the question of arbitrability.

**B.**

We next address whether—despite being non-signatories to the partnership agreement—the Schlacks brothers nonetheless may be compelled to arbitrate based on principles of equitable estoppel and agency law. Federal courts apply "traditional principles of state law" to determine whether a contract may "be enforced by or against nonparties to the contract." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citation modified). Under Delaware law, "[a] non-signatory to a contract cannot be bound by an arbitration clause unless 'traditional principles of contract and agency law' equitably confer upon that party signatory status with regard to the underlying agreement." *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430 (Del. Ch. 2007).

### 1. Equitable Estoppel

The defendants argue that the Schlacks brothers are bound to the terms of the partnership agreement—and thus to its arbitration provision—by principles of equitable estoppel. "Equitable estoppel supports enforcement of a forum selection provision against a non-signatory if the non-signatory accepted a direct benefit under the agreement." *Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1074 (Del. Ch. 2021). Equitable estoppel thus "prevents the non-signatory from accepting the benefits of the agreement without also accepting its burdens." *Id.* In *Flotek*, the Delaware Court of Chancery applied the tripartite "*Capital Group* test" to determine whether a non-signatory to a contract may be bound by a forum selection clause in that contract. *Id.* at 1074 (citing *Cap. Grp. Cos., Inc. v. Armour*, 2004 WL 2521295, at *5 (Del. Ch. Oct. 29, 2004)). The defendants assert that we should apply the *Capital Group* test here, and the Schlacks brothers respond that (1) the defendants waived this argument by failing to raise it to the district court and (2) the test is inapplicable.

Even assuming that the Schlacks brothers are incorrect on both points and the *Capital Group* test applies, the defendants fail to establish that they meet *Capital Group*'s requirements. Under *Capital Group*:

> [A] court can enforce a forum selection provision against a non-signatory if the following three elements are met: (i) the agreement contains a valid forum selection provision; (ii) the non-signatory has a sufficiently close relationship to the agreement, either as an intended third-party beneficiary under the agreement or under principles of estoppel; and (iii) the claim potentially subject to the forum selection provision arises from the non-signatory's standing relating to the agreement.

*Flotek*, 262 A.3d at 1090 (citing *Cap. Grp. Cos., Inc.*, 2004 WL 2521295, at *5). Here, the defendants fail to establish *Capital Group*'s second element.[2] Accordingly, they are not entitled to enforce the arbitration provision against the Schlacks brothers under an equitable estoppel theory.

The second element requires that the Schlacks brothers have a "sufficiently close relationship to the agreement, either as an intended third-party beneficiary under the agreement or under principles of estoppel." *Id.* The defendants argue that principles of estoppel apply here.[3] Under Delaware principles of estoppel:

> [A] forum selection provision can bind the non-signatory if (i) the non-signatory accepted a direct benefit from the agreement or (ii) the non-signatory had a close relationship to the agreement, a signatory to the agreement controlled the non-signatory, and the circumstances establish that the signatory agreed to the forum selection provision on behalf of its controlled affiliate.

*Id.* As the second option clearly does not apply—none of the corporate signatories "controlled" the Schlacks brothers—the defendants are left to argue that the Schlacks brothers "accepted a direct benefit from the agreement." *See id.* The defendants argue that this is true because the partnership agreement provided for significant distributions to its corporate members, including TKF LLC, of which the Schlacks brothers serve as managing members. This argument fails for two reasons: first, because the defendants did not allege that the Schlacks brothers *actually received* a benefit from the partnership agreement, *see id.* at 1091 (explaining that a benefit "must actually be received"); and second, because even to the extent that TKF G.P.'s distributions might ultimately benefit the Schlacks brothers, that benefit

---

[2]The Schlacks brothers do not dispute that the first *Capital Group* element is established. We need not address the third element because the defendants fail to establish the second.

[3]The defendants do not argue that either of the Schlacks brothers qualifies as an "intended third-party beneficiary."

would be considered "indirect" under Delaware law. *See NAMA Holdings*, 922 A.2d at 432 (explaining that any benefits a party received from a contract with an arbitration clause were "strictly indirect" because of the structure of the party's ownership interest—the party was the principal investor in the organization which owned a signatory to the contract). Therefore, the defendants fail to meet the second element of the *Capital Group* test. Accordingly, we affirm the district court's conclusion that the defendants failed to establish that equitable estoppel requires the enforcement of the arbitration provision against the Schlacks brothers.

## 2. Agency Law

The defendants also argue that the Schlacks brothers are bound to the arbitration provision because they serve as agents to two signatories of the partnership agreement: TKF II GP and EquipmentShare. An agent may be made a party to a contract by his principal, if the principal acts on his behalf with actual, implied, or apparent authority. *BuzzFeed, Inc. v. Anderson*, 2022 WL 15627216 at *10 (Del. Ch. Oct. 28, 2022). The partnership agreement states that it will be "binding upon and inure to the benefit of the heirs, executors, administrators, personal or legal representatives, successors and assigns of the respective parties hereto." The defendants argue that the corporate signatories "clearly intended" to bind the Schlacks brothers to the partnership agreement, given their role as "legal representatives" to TKF II GP—of which they are managers and members—and ES—of which they are officers and directors.

Because the partnership agreement does not define the term "personal or legal representatives," we give the term "its ordinary and usual meaning." *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). The partnership agreement provides that "[a]ll questions concerning [its] construction, interpretation and validity" should be "governed by and construed and enforced in accordance with" Delaware law. Delaware defines "personal representative" as "[a] person who manages the legal affairs of another because of incapacity or death, such as the executor of an estate." *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l*

*Hosp., Inc.*, 36 A.3d 336, 344 (Del. 2012). Similarly, Delaware defines "legal representative" as "a person who manages the affairs of another because of incapacity or death." *Id.* The Schlacks brothers cannot be "personal or legal representatives" to any of the partner signatories because all the partners are corporate entities and thus incapable of being incapacitated or dying like a natural person.

Contrary to the defendants' arguments, this interpretation does not render the term "personal or legal representatives" a nullity. The partnership agreement anticipates that the partnership might one day admit "Additional Limited Partners"; these partners might very well be natural persons capable of having personal or legal representatives. The defendants also argue that this interpretation also creates a nullity because a personal or legal representative might also qualify as an "executor" or "administrator." We disagree. The presence of similar terms in a list—even terms with overlapping definitions—is consistent with *noscitur a sociis*, a "traditional canon of construction" that "dictates that words grouped in a list should be given related meaning." *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (citation modified).

In sum, the defendants fail to establish that TKF II GP and EquipmentShare acted with actual, implied, or apparent authority on behalf of the Schlacks brothers. Thus, Delaware principles of agency law do not bind the Schlacks brothers to the arbitration provision.

### III. Conclusion

For the foregoing reasons, we affirm.

_____